Luis **JIMENEZ**, Petitioner–Appellant,

v.

Hans **WALKER**, Superintendent of Auburn Correctional Facility, Respondent–Appellee.

Docket No. 03–2980–PR.

United States Court of Appeals, Second Circuit.

Argued: Oct. 31, 2005.

Decided: July 31, 2006.

Joel A. Brenner, East Northport, NY, for Petitioner–Appellant.

Richard A. Brown, District Attorney, John M. Castellano and Donna Aldea, Assistant District Attorneys, Queens County, Kew Gardens, NY, submitted a brief for Respondent–Appellee.

Before WALKER, Chief Judge, FEINBERG and CARDAMONE, Circuit Judges.

JOHN M. WALKER, JR., Chief Judge.

Petitioner-appellant Luis Jimenez ("petitioner") appeals from a judgment of the United States District Court for the Eastern District of New York (Jack B. Weinstein, *Judge*), entered on November 4, 2003, denying his petition for a writ of habeas corpus. Jimenez presses two claims on appeal: (1) the state court's exclusion of evidence that the murder victim was carrying five ounces of heroin in his pocket denied Jimenez his right to present a meaningful defense and (2) the cumulative effect of trial-court errors denied Jimenez his right to a fundamentally fair trial. Respondent-appellee Hans Walker, Superintendent of Auburn Correctional Facility ("respondent" or "state"), contends that the heroin evidence was constitutionally excluded and that the cumulative-error claim is procedurally defaulted and meritless.

We hold as follows: (1) the conclusive presumption laid out by the Supreme Court in *Harris v. Reed* and *Coleman v. Thompson* applies to the determination under 28 U.S.C. § 2254(d) of whether an adjudication is "on the merits"; (2) "AEDPA deference" under 28 U.S.C. § 2254(d) is due to a state court's rejection of a federal claim as "either unpreserved for appellate review or without merit" because this court has interpreted *Harris* and *Coleman* to deem such "either/or" adjudications as resting on the merits of the petitioner's federal claim, *see Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804 (2d Cir.2000); (3) habeas relief may not issue regarding Jimenez's present-a-defense claim because the state court's rejection of that claim did not "result[ ] in a decision that was contrary to" or "involve[ ] an unreasonable application of" clearly established Supreme Court precedent, *see* 28 U.S.C. § 2254(d)(1); and (4) the district court properly denied habeas relief regarding Jimenez's cumulative-error claim because Jimenez did not properly exhaust state remedies on this claim by fairly presenting the claim to the state courts, may no longer do so, and has not overcome this procedural default by showing either cause and prejudice or a fundamental miscarriage of justice. We therefore AFFIRM the judgment of the district court.

## BACKGROUND

On October 4, 1993, Elkin Cardona was shot and killed while standing on a street in Queens, New York. Luis Jimenez was tried and convicted for his murder. The criminal proceedings surrounding his conviction are relevant to this appeal.

### I. Trial

At Jimenez's murder trial, Margie Cardona, who is the victim's widow, and Juan Barrera, who is Margie Cardona's brother and who lived with Margie and the victim, testified for the prosecution as follows. On the day of the shooting, the victim and Margie Cardona gave Jimenez a ride from Queens to Manhattan. During the ride, the victim became upset with Jimenez and argued with him, although the mood did lighten later that day. Around 9:00 that evening, back in his home in Queens, the victim received a page on his beeper and left with Barrera in the victim's van to meet Jimenez. The victim picked up Jimenez and drove to a street in Flushing, Queens, where all three got out. At a payphone on the corner, Jimenez dialed a phone number two or three times and told the group that he had a wrong phone number. Jimenez announced that he was going to his apartment, which was a few blocks away, to get the right number and walked away.

According to Barrera, about ten minutes later, while the victim and Barrera were waiting on the street for Jimenez to return, Barrera saw Jimenez driving his old, white van slowly toward them. Barrera testified that the van passed them and made a U-turn at the next intersection and that upon returning, a concealed person in the passenger's seat extended a gun out the passenger window and opened fire at the victim and Barrera. Ballistics reports indicate that at least eleven 0.9 mm bullets and one 0.380 mm bullet were fired. The victim and Barrera ducked behind some cars, and Barrera then ran away down the street. The victim died at the scene, apparently killed by the single 0.380 mm slug.

Barrera returned to the crime scene after removing his sweatshirt and spoke to an officer without revealing his knowledge of the shooting. Although Barrera had told Margie Cardona what happened, she likewise did not immediately tell the police what she knew. Both eventually did volunteer information about the shooting to the police.

Other evidence was introduced at trial. The jury heard that the police located Jimenez's van in its parking lot near the crime scene but did not recover any inculpatory evidence upon searching it. The van was apparently owned, though not registered, by Jimenez's father-in-law, who had been convicted of drug and weapons crimes and who testified that Jimenez did not drive the van on the day of the shooting. A lobby attendant in a building near the van's designated parking spot testified that he thought the van was present in the parking lot at the time of the shooting.

Further evidence contradicted Barrera's testimony for the prosecution. A teenager who resided in an apartment overlooking the crime scene testified that three people—not two—were standing on the street when a van pulled up and began shooting at them. The teenager also testified that the van had no side windows, whereas Jimenez's father-in-law testified that his van had side windows. Another child who lived nearby testified that two people—not just Barrera—fled down the street after the shooting, one briefly displaying an object that appeared to be a gun. And ballistics evidence suggested that shots were fired from the sidewalk as well as the street.

At the crime scene, the police found a plastic bag containing five ounces [1] of heroin—evidently worth thousands of dollars—in the pants pocket of the victim. At Jimenez's trial, the prosecutor moved *in limine* to prohibit any mention of this heroin evidence before the jury. In response, Jimenez argued that the evidence was relevant because it would tend to prove the defense theory that the victim was killed by someone involved in or related to a drug deal that was to occur that night, not because of an argument with Jimenez earlier in the day, and that Barrera falsely implicated Jimenez in the shooting out of fear that Barrera himself would be charged with drug crimes or with murder. The trial court ruled that the heroin evidence lacked any probative value and granted the prosecutor's motion *in limine* to exclude the evidence. Jimenez was then tried and convicted of crimes including murder in the second degree. The trial court sentenced him to imprisonment for 20 years to life for the murder.

## II. Post-trial Proceedings

Jimenez appealed his conviction to the New York Supreme Court, Appellate Divi-

---

1. The parties do not agree whether the heroin weighed four or five ounces. The amount is immaterial to our analysis.

sion, pressing his claim that the trial court's exclusion of the heroin evidence deprived him of his constitutional right to present a meaningful defense. The Appellate Division affirmed Jimenez's conviction, summarily dismissing his challenge to the heroin-evidence exclusion as one of several contentions that were "either unpreserved for appellate review or without merit." *People v. Jimenez*, 245 A.D.2d 304, 670 N.Y.S.2d 118, 118 (App.Div.1997). Leave to appeal to the New York Court of Appeals was denied. *People v. Jimenez*, 91 N.Y.2d 927, 670 N.Y.S.2d 408, 693 N.E.2d 755 (1998).

## III. Federal Habeas Proceedings

Jimenez timely applied for a writ of habeas corpus in the United States District Court for the Eastern District of New York. In his application, Jimenez argued that he was denied his right to present a defense by the trial court's exclusion of the heroin evidence. The district court found that the state trial court did not err in ruling the heroin evidence irrelevant because "it was reasonable for the trial court to hold that the narcotics evidence was too remote to the question of petitioner's guilt or innocence to be probative." *Jimenez v. Walker*, No. 00–cv–3599, 2003 WL 22952842, at *10 (E.D.N.Y. Nov.4, 2003). The district court therefore held that "[h]abeas corpus relief on this ground is not warranted." *Id.* The issue did, however, earn a certificate of appealability, as did the issue whether "because of the paucity of evidence to convict, other errors or exercises of discretion by the trial court denied petitioner a fair trial." *Id.* at *14. This appeal followed.

**2.** As we have noted, § 2254(d) may more accurately be called a "limitation on relief" than a deferential "standard of review." *See Cotto*

## DISCUSSION

Jimenez presses two claims on appeal. First, he claims that the trial court violated his due process right to present a meaningful defense by excluding evidence that the police found five ounces of heroin in the victim's pants pocket. Second, he claims that cumulative trial-court error violated his right to due process.

In evaluating Jimenez's claims, we review de novo the district court's denial of the writ. *Jones v. Stinson*, 229 F.3d 112, 117 (2d Cir.2000). We hold that although the Appellate Division's resolution of the first claim may have been erroneous, it was not so erroneous as to be objectively unreasonable. As a result, Jimenez is ineligible for habeas relief regarding this claim. *See* 28 U.S.C. § 2254(d)(1). We deny the writ on the second claim because Jimenez did not properly exhaust the claim in state court and may no longer do so.

## I. The Due Process Right to Present a Defense

### A. AEDPA Deference

Because Jimenez filed his habeas application after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 ("AEDPA"), we must first decide whether we owe "AEDPA deference" to the state courts' resolution of Jimenez's present-a-defense claim because the claim "was adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d).[2] The Appellate Division rejected this claim by stating that it was among claims that were "either unpreserved for appellate review or without merit." *Jimenez*, 670 N.Y.S.2d at 118.

*v. Herbert*, 331 F.3d 217, 229 n. 4 (2d Cir. 2003).

Our case law on whether AEDPA deference applies when confronted by such language has confused some observers. Indeed, this court has labeled our decisions in this area a "mare's nest." *Shih Wei Su v. Filion,* 335 F.3d 119, 125 (2d Cir.2003). That confusion might be what led us in *Shih Wei Su* to opine that "our cases seem to contemplate situations in which, because of uncertainty as to what the state courts have held, no procedural bar exists and yet no AEDPA deference is required." *Id.* at 126 n. 3. Jimenez argues that this is such a case.

The confusion in our opinions centers around the fundamental question of how to interpret what state courts have done when their decisions remain somewhat opaque. Our review of answers to this question begins before the 1996 enactment of AEDPA, when federal habeas courts were already determining whether state courts had disposed of a federal claim on its merits or, alternatively, on a state procedural ground. The inquiry then arose in the context of the adequate-and-independent-state-ground doctrine, under which federal courts may not review the judgment of a state court that "rests on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed,* 489 U.S. 255, 260, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). Because this doctrine applies on federal habeas review and because the state-law ground may be a procedural bar, *id.* at 261–62, 109 S.Ct. 1038, federal habeas courts often speak of an "adequate and independent procedural bar" to federal review of a claim or simply of a "procedural-

ly barred" federal claim. We use these terms interchangeably.

Recognizing that it can sometimes be difficult to decide whether a state court rested its judgment on the merits of the federal claim or on an independent procedural rule, the Supreme Court created a conclusive presumption to guide the inquiry. The presumption was created for administrative convenience, predicting easily and accurately the actual basis of a state court's decision in most cases at the expense of error in a "small number of cases." *Coleman v. Thompson,* 501 U.S. 722, 737, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Harris,* 489 U.S. at 264–65, 109 S.Ct. 1038; *see Jones,* 229 F.3d at 117–18. But because the Supreme Court created this predictive presumption before Congress enacted AEDPA, the Court has not decided whether its presumption, designed in the procedural-bar context to predict the basis of a state-court decision, applies to the seemingly parallel inquiry under AEDPA of whether a state-court decision is "on the merits."

If the presumption does apply under AEDPA, we would be confronted with the "binary" situation noted by *Ryan v. Miller,* 303 F.3d 231, 246 (2d Cir.2002), and labeled as such by *Messiah v. Duncan,* 435 F.3d 186, 197 n. 5 (2d Cir.2006), in which we either apply AEDPA deference to review a state court's disposition of a federal claim or refuse to review the claim because of a procedural bar.[3] But if the presumption does not apply under AEDPA, it is possible that a different test fashioned for the AEDPA inquiry could result in our deeming a state court to have decided a federal claim on its merits (negating the

**3.** Assuming, of course, that the independent state procedural bar is adequate to support the judgment, not excused by a showing of either cause and prejudice or a fundamental miscarriage of justice, and raised by the re-

spondent. *Trest v. Cain,* 522 U.S. 87, 89, 118 S.Ct. 478, 139 L.Ed.2d 444 (1997); *Coleman,* 501 U.S. at 730, 111 S.Ct. 2546; *Harris,* 489 U.S. at 262, 109 S.Ct. 1038; *Cotto,* 331 F.3d at 239, 247.

existence of a procedural bar) while simultaneously deeming the state court's decision to not rest on the merits of the federal claim (negating AEDPA deference). Such dissonance would make little sense, *see DeBerry v. Portuondo*, 403 F.3d 57, 70–72 (2d Cir.2005) (Walker, C.J., concurring),[4] but it would nonetheless be the law of our circuit until this court en banc or the Supreme Court altered it.

A thorough review of our cases, with careful attention paid to distinguishing holdings from dicta, reveals that they do not chart such divergent courses. As explained below, although we have never explicitly stated that the *Harris* presumption applies to the AEDPA-deference determination, our holdings are consistent with that result and do not create the tension noted in *Shih Wei Su* and relied upon by Jimenez. But before reviewing our case law, we describe the *Harris* presumption in more detail.

### 1. The *Harris* conclusive presumption

This presumption finds its roots in *Michigan v. Long*, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), in which the Supreme Court held that

> when ... a state court decision fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion,

we will accept as the most reasonable explanation that the state court decided the case the way it did because it believed that federal law required it to do so.

*Long*, 463 U.S. at 1040–41, 103 S.Ct. 3469. In *Harris*, the Supreme Court observed that habeas review "presents the same problem of ambiguity [in state-court decisions] that this Court resolved in *Michigan v. Long*," explaining that "[f]aced with a common problem, we adopt a common solution." *Harris*, 489 U.S. at 262, 263, 109 S.Ct. 1038. The *Harris* Court explicitly "extend[ed] to habeas review the 'plain statement' rule [of *Long*] for determining whether a state court has relied on an adequate and independent state ground." *Id.* at 265, 109 S.Ct. 1038. Accordingly, we call the *Long* presumption as applied in habeas actions the "*Harris* presumption."

The Supreme Court reaffirmed the *Harris* presumption two years later in *Coleman*, emphasizing the presumption's requirement that the state court's decision "must fairly appear to rest primarily on federal law or to be interwoven with federal law." *Coleman*, 501 U.S. at 735, 111 S.Ct. 2546. In other words, before applying the *Harris* presumption, a federal habeas court must have "good reason" to doubt that the decision rests on an independent and adequate state ground. *Id.* at 739, 111 S.Ct. 2546. Although this requirement traces back to *Long*, we call it the "*Coleman* requirement" or the "*Cole-*

---

**4.** Perhaps such a result would make sense if the Supreme Court meant the *Harris* presumption to maximize prisoner relief from federal habeas courts. But the Court has announced its reasons for creating the presumption, and its predictive and administrative foundations do not disclose such a purpose.

We also note a textual basis for concluding that the procedural-bar doctrine's *Harris* presumption applies under AEDPA: "[F]ederal court caselaw applying the procedural [bar]

doctrine customarily distinguishes between 'rulings on the merits' and dismissals on procedural grounds ... [and] Congress is presumed to be aware of such customary judicial usage of a term" when it enacts a statute such as AEDPA. Randy Hertz & James S. Liebman, 2 *Federal Habeas Corpus Practice and Procedure* § 32.2, at 1422 (4th ed.2001). Presumably, then, the term "on the merits" in AEDPA takes the same meaning as it does in the procedural-bar context, bringing along the *Harris* presumption.

*man* requisite to federal merits review" because of its emphasis by the *Coleman* Court.

To decide whether this requirement was met, the *Coleman* Court looked to the relevant state-court opinion, which granted the prosecution's motion to dismiss a petition for appeal, as well as to the prosecution's moving papers, which argued for dismissal on the sole basis of a procedural bar.[5] The Supreme Court held that the state court's decision " 'fairly appears' to rest primarily on *state* law," *id.* at 740, 111 S.Ct. 2546, and therefore that the requirement was not met. Thus, the *Harris* presumption did not apply, and the petition was dismissed as procedurally barred.

In sum, under *Harris* and *Coleman,* federal habeas courts should distinguish between two mutually exclusive categories of state-court decisions disposing of a federal claim:

(1) state-court decisions that fairly appear either to rest primarily on federal law or to be interwoven with federal law and

(2) state-court decisions that fairly appear to rest primarily on state procedural law.

*See id.* at 739–40, 111 S.Ct. 2546. Absent a clear and express statement of reliance on a state procedural bar, the *Harris* presumption applies to decisions in the first category and deems them to rest on federal law. The merits of the federal claim are therefore reviewable in federal court. The *Harris* presumption does not apply to decisions in the second category, which show themselves to rest on an independent state procedural bar. When the state court's decision rests on an independent procedural bar, either by a plain statement negating the *Harris* presumption or by the absence of any indication that federal law was the basis for the state-court decision, a federal court must still determine whether that state procedural ground is adequate to support the judgment. *See id.* at 745, 111 S.Ct. 2546 (considering, after finding that a state decision rested on an independent state procedural bar, whether the state ground was adequate to support the judgment, and resolving the question on waiver grounds). If it is, a federal court may not review the judgment unless the habeas petitioner shows both cause and prejudice or a fundamental miscarriage of justice. *Id.* at 750, 111 S.Ct. 2546; *Harris,* 489 U.S. at 262, 109 S.Ct. 1038.

### 2. Second Circuit procedural-bar case law

After the Supreme Court decided *Harris* and *Coleman,* we began to speak on their application. The first relevant opinion to do so was *Quirama v. Michele,* 983 F.2d 12 (2d Cir.1993). In *Quirama,* we extended *Coleman* slightly by expanding the behind-the-opinion facts to which we look in deciding whether the *Coleman* requirement is met. We were presented there with a state court's decision affirming without explanation the petitioner's conviction. *Id.* at 13. Although the face of the state court's opinion was silent,[6] we looked behind the opinion to both the state court's awareness of a procedural bar and the state court's practice when faced with

---

5. Thus, *Coleman* instructs us that a court may look behind the face of the opinion to decide whether the *Coleman* requirement is met, i.e., whether a state-court decision fairly appears to rest on or to be interwoven with federal law.

6. *Quirama* did not mention the presumption of *Ylst v. Nunnemaker,* 501 U.S. 797, 802, 111

S.Ct. 2590, 115 L.Ed.2d 706 (1991), regarding silent opinions. But because the petitioner there did not raise his federal claim in state trial court, there seems to have been no explained decision prior to the state appellate court's decision, and therefore the *Ylst* presumption would not apply.

such a bar. We noted (1) that the government argued to the state court that the federal claims were meritless as well as procedurally barred because they were not raised in the trial court and (2) that New York state courts permit review of such claims only sparingly. *Id.* Accordingly, we held that the *Coleman* requirement was not met because the state court's silent decision appeared to rest on a state procedural bar. Thus, the *Harris* presumption did not apply, and we could not review the claims absent a showing of cause and prejudice or a fundamental miscarriage of justice. *Id.* at 14.

This holding was a slight extension of *Coleman.* The *Coleman* Court found that the state court's decision fairly appeared to rest primarily on state procedural grounds because the state court had granted a motion to dismiss that was based solely on procedural law. *Coleman,* 501 U.S. at 740, 111 S.Ct. 2546. In *Quirama,* the state court affirmed the conviction upon briefs that argued the merits as well as a state procedural bar; we looked not only to the briefs but also to the practice of state courts, a fact that *Coleman* did not examine, to decide whether the *Coleman* requirement was met. *Quirama,* 983 F.2d at 14. Thus, *Quirama* instructs us to consider three factors (or "clues" as the Supreme Court called them in *Ylst v. Nunnemaker,* 501 U.S. 797, 802, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991)) to determine whether the *Coleman* requisite to the *Harris* presumption is met: (1) the face of the state-court opinion, (2) whether the state court was aware of a procedural bar, and (3) the practice of state courts in similar circumstances.

Some time after *Quirama,* we decided *Fama v. Commissioner of Correctional Services,* 235 F.3d 804 (2d Cir.2000), which concerns the "either/or" type of opinion presented today. In *Fama,* we answered the question whether a state court's decision that rejects a federal claim as "either unpreserved for appellate review or without merit" rests on an adequate and independent state procedural bar. *Id.* at 809–11. After reviewing our case law, we held that decisions using the "either/or" language are deemed to rest on federal law under the *Harris* presumption, rendering the federal claim reviewable:

> We today decline to extend *Quirama* to those cases in which an opinion of the state court speaks, however cursorily, to the question of whether the state or federal ground was the basis for decision. And we explicitly hold that when a state court uses language such as "[t]he defendant's remaining contentions are either unpreserved or without merit," the validity of the claim is preserved and is subject to federal review. When it uses such language, the state court has not adequately indicated that its judgment rests on a state procedural bar, *see Harris,* 489 U.S. at 263, 109 S.Ct. 1038, 103 L.Ed.2d 308, and its reliance on local law is not clear from the face of the court's opinion. *See Coleman,* 501 U.S. at 735, 111 S.Ct. 2546, 115 L.Ed.2d 640.

*Fama,* 235 F.3d at 810–11 (footnote omitted). To be sure, *Fama* did not explicitly decide whether the *Coleman* requisite was met. In the quotation above, the citation to *Coleman* refers only to the no-clear-statement requirement of the *Harris* presumption, which requires that " 'the adequacy and independence of any possible state law ground is not clear from the face of the opinion.' " *Coleman,* 501 U.S. at 735, 111 S.Ct. 2546 (quoting *Long,* 463 U.S. at 1040–41, 103 S.Ct. 3469). Although the face of the state court's opinion constrains the clear-statement inquiry, both the Supreme Court in *Coleman* and this court in *Quirama* looked behind the face of the state court's opinion to decide whether the *Coleman* requirement was met.

Yet *Fama* appears to have implicitly decided that the *Coleman* requirement is

met when the state court issues a terse "either/or" rejection of a federal claim. *Fama's* statement that it was declining to "extend" *Quirama* implies that even if circumstances behind the opinion indicate that it rests on a procedural bar (as in *Quirama)*, the "either/or" language introduces uncertainty sufficient to render the decision "interwoven with federal law" and therefore to satisfy the *Coleman* requirement. To be sure, *Fama* admits of multiple readings. For example, because *Fama* does not describe any of the behind-the-opinion circumstances that *Coleman* and *Quirama* instruct us to examine, *Fama,* 235 F.3d at 810–11, it may be taken that there were no useful behind-the-opinion clues to the basis of the state court's decision (otherwise we would not have been silent on the matter). In that event, we simply held that in the absence of such clues, a state court's "either/or" language satisfies the *Coleman* requirement. Another possibility is that we simply did not consider whether the *Coleman* requisite to federal merits review was present because the parties did not argue the point; this would explain why we did not cite the *Coleman* requirement in stating our holding. *Id.* But because *Fama* does discuss *Quirama's* reliance on the absence of the *Coleman* requirement, *id.* at 810, and because *Fama* stated that it was declining to "extend" *Quirama, id.,* we read *Fama* to hold that the *Coleman* requirement is met by an "either/or" state-court opinion under any possible circumstances.

### 3. Second Circuit AEDPA-deference case law

The balance of the relevant case law concerns the test for whether AEDPA def-

erence under 28 U.S.C. § 2254(d) is due to a state court's adjudication of a claim because the adjudication is "on the merits." As discussed below, we have directed courts to examine the same three clues to make this determination that courts examine to establish whether the *Coleman* requirement in the procedural-bar context is met. And we have also strongly suggested that the *Harris* presumption applies to the § 2254(d) "on the merits" test. Finally, we have never held that AEDPA deference is not due to an "either/or" decision, which *Fama* says is on the merits for procedural-bar purposes,[7] alleviating any concern of doctrinal tension such as that expressed in *Shih Wei Su,* 335 F.3d at 126 n. 3.

#### a. *Sellan v. Kuhlman*

In *Sellan v. Kuhlman,* 261 F.3d 303 (2d Cir.2001), we began to identify a test for whether a state court's decision is "on the merits" for AEDPA purposes. *Sellan* decided two AEDPA-deference questions, which could have been better distinguished. The first question is whether some minimum level of explanation is necessary for a state court to have "adjudicated on the merits" a claim for AEDPA purposes. We answered that question in the negative, holding that a "state court adjudicates a state prisoner's federal claim on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Id.* at 312 (quotation and alteration marks omitted).

This ruling left us with a second question: how to determine whether a disposition is "on the merits." The respondent in *Sellan* had not argued that a procedural bar existed,[8] so we did not

---

7. *Fama* did not decide whether AEDPA deference applied.

8. Because the existence of an adequate and independent procedural bar is not jurisdictional in the habeas context, a federal court is

not required to raise it *sua sponte;* rather, it is "a defense that the State is obligated to raise and preserve if it is not to lose the right to assert the defense thereafter." *Trest,* 522

consider the possibility that the *Harris* presumption might apply to this determination. But, even without looking to that body of law, we adopted a test requiring examination of the same three clues that *Quirama* would have us consider when determining whether the *Coleman* requirement is met: (1) the state court's opinion, (2) whether the state court was aware of a procedural bar, and (3) the practice of state courts in similar circumstances. *Id.* at 314.[9]

In *Sellan,* we applied this test to a state court's order that disposed of the petitioner's motion for a writ of coram nobis with the statement, "Upon the papers filed in support of the motion and the papers filed in opposition thereto, it is ORDERED that the motion is denied." *People v. Sellan,* No. 9152 (N.Y.App.Div. Jan. 25, 1990), *quoted in Sellan,* 261 F.3d at 308. We held that because (1) the opinion disposed of the motion as "denied" and (2) a procedural bar was not argued or available, the state court's adjudication was "on the merits." *Sellan,* 261 F.3d at 314. Accordingly, we applied the AEDPA deference mandated by 28 U.S.C. § 2254(d)(1), and we denied habeas relief, finding that although "we might well be inclined to grant the writ" under pre-AEDPA de novo review, id. at 310, the petitioner's habeas claim "was not so strong that it was unreasonable for the coram nobis court to [reject it]," *id.* at 317.

Our holding in *Sellan* is consistent with an understanding that the Supreme Court's *Harris* presumption applies under AEDPA. *Sellan's* three-part test simply lists the clues to which we look under *Quirama* in deciding whether the *Coleman*

requirement (that the state court's decision fairly appears to rest primarily on federal law or to be interwoven with federal law) is met. In circumstances such as *Sellan's,* the state-court decision "fairly appears" to rest primarily upon federal law, establishing the *Coleman* requirement, and because there is no plain statement otherwise, the *Harris* presumption conclusively deems the decision to rest on the merits of the federal claim. Thus, no adequate and independent procedural bar supports the state court's decision, and we afford AEDPA deference to the state court's adjudication.

After we announced the *Sellan* test, three cases followed that discussed AEDPA deference in the context of a state court's disposition of claims as "either unpreserved or without merit," leading us to subsequently comment that "apparent tension" had resulted. *Messiah,* 435 F.3d at 197 n. 5. But, as we explain below, even if some of the pronouncements in these cases create tension, their holdings do not.

### b. *Ryan v. Miller*

The first of the three cases is *Ryan v. Miller,* 303 F.3d 231 (2d Cir.2002). There, we were confronted with a state court's opinion rejecting Ryan's Sixth Amendment claim with the language, "The defendant's remaining contentions are either unpreserved for appellate review or without merit." *People v. Ryan,* 215 A.D.2d 786, 627 N.Y.S.2d 410, 411 (App.Div.1995), *quoted in Ryan,* 303 F.3d at 245–46. We decided to "read the state court's opinion as having adjudicated Ryan's claim on its merits" because (1) there was nothing on

---

U.S. at 89, 118 S.Ct. 478 (alteration and quotation marks omitted).

**9.** Our exact phrasing of the test gave the factors in the reverse order: "(1) what the state courts have done in similar cases; (2)

whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state court's opinion suggests reliance upon procedural grounds." *Sellan,* 261 F.3d at 314.

the face of the state court's opinion to indicate that the claim was decided on procedural grounds and (2) it was undisputed that no procedural bar existed. *Ryan,* 303 F.3d at 246 (citing *Aparicio v. Artuz,* 269 F.3d 78, 94 (2d Cir.2001) (citing *Sellan,* 261 F.3d at 312)). We explained that any other result would be inconsistent with entertaining the claim at all:

> There is no reason . . . to doubt that AEDPA applies in this situation because the only alternative to finding the claim adjudicated on the merits would be finding the claim procedurally barred, in which case we would not have entertained the claim in the first instance (absent a showing of cause and prejudice).

*Id.* Thus, for the first time, we linked the AEDPA-deference determination with the procedural-bar determination, reasoning that the classification of a state-court decision presents a binary circumstance—with AEDPA deference down one path and a procedural bar down the other. And *Ryan's* result is consistent with *Fama,* which, while admittedly ignoring the background circumstances, also concluded that an "either/or" state-court decision rested on the merits of the petitioner's federal claim.

### c. *Miranda v. Bennett*

In the second of the three cases, *Miranda v. Bennett,* 322 F.3d 171 (2d Cir. 2003), we considered whether AEDPA deference would be due to a state court's rejection of two federal claims as "unpreserved for appellate review, without merit, or [not requiring] reversal." *People v. Miranda,* 243 A.D.2d 584, 665 N.Y.S.2d 507, 508 (App.Div.1997), *quoted in Miranda,* 322 F.3d at 179. We opined that AEDPA

deference was not warranted because the state court's disjunctive language "does not reveal whether a particular remaining claim was rejected on the ground that it was unpreserved or on the ground that it lacked merit, and the record does not make it clear that either claim was rejected for lack of merit." *Miranda,* 322 F.3d at 179. But this conclusion about the deference due to the state court's decision of those claims was dicta, not essential to the decision in *Miranda* remanding the case to the district court for clarification of why it denied the habeas petition regarding those claims. *Id.* at 182. Rather, the remand was required, we said, because the federal district court had simply adopted as its opinion the respondent's memorandum of law that posited alternative grounds, "leav[ing] the district court's ruling ambiguous" as to the basis for denying relief on the two relevant federal claims and frustrating the review function of the courts of appeals. *Id.* at 176, 175–179.[10]

We do not suggest that we may ignore the AEDPA-deference pronouncements in this case because they are dicta. Dicta deserve close consideration; emphatic dicta, all the more. *See United States v. Garcia,* 413 F.3d 201, 232 n. 2 (2d Cir. 2005) (Calabresi, J., concurring). But dicta "[are] not and cannot be binding. Holdings—what is necessary to a decision—are binding. Dicta—no matter how strong or how characterized—are not." *Id.; accord Carroll v. Lessee of Carroll,* 57 U.S. (16 How.) 275, 286–87, 14 L.Ed. 936 (1853) (Curtis, J.) ("[I]f [a point of law] might have been decided either way without affecting any right brought into question, then, according to the principles of the common law, an opinion on such a question

---

10. *See also Rudenko v. Costello,* 322 F.3d 168, 170 (2d Cir.2003) ("As discussed in opinions we file today in *Miranda v. Bennett,* . . . we conclude that in some cases a district court's adoption of the opinions of the state appellate court and of the State's contentions opposing the respective habeas petitions does not provide this Court with sufficient information to conduct a meaningful appellate review . . . .").

is not a decision.").[11] Thus, although *Miranda's* AEDPA-deference pronouncements are not binding, we nonetheless consider their persuasiveness.

We ultimately cannot find *Miranda's* AEDPA dicta persuasive because there is a fine but firm line between situations like *Miranda's* and situations like those in the case that *Miranda* relied upon for support, *Boyette v. Lefevre*, 246 F.3d 76 (2d Cir. 2001). *Boyette* governs situations in which the state court has announced one or more reasons for its rejection of a claim on the merits; *Boyette* tells us that, when a state court has articulated its reasons for rejecting some elements of a federal claim, AEDPA deference applies only to the elements that the state court discussed. Thus, a federal court may grant the writ under AEDPA if the adjudication of the discussed elements was objectively unreasonable and the adjudication of the undiscussed elements was simply erroneous. *Id.* at 91; *see also Wiggins v. Smith*, 539 U.S. 510, 529, 535–36, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (proceeding in this manner, finding § 2254(d) to be satisfied by an objectively unreasonable state-court application of law regarding one element of a claim and stating that § 2254(d) does not circumscribe federal habeas review of a second element not discussed by the state courts).[12]

■ But *Boyette* did not hold that a silent opinion is not entitled to AEDPA deference under § 2254(d). Indeed, to so extend *Boyette's* rule would undermine *Sellan's* holding that an unexplained state-court disposition of a claim can be entitled to AEDPA deference. *Sellan*, 261 F.3d at 311–12. Creating such conflict is unnecessary because *Sellan* and *Boyette* can coexist: when the state court articulates its reasons for rejecting a federal claim on its merits, we review those reasons; when "a state court fails to articulate the rationale underlying its rejection" of a federal claim on its merits, we focus our review on the state court's ultimate decision. *Id.* In sum, because the rule announced in *Miranda's* dicta was not supported by *Boyette's* holding, and given that *Miranda* did not consider how its AEDPA rule would square with procedural-bar rules, we are unable to find *Miranda's* rule persuasive.[13]

---

**11.** *See generally* Arthur D. Hellman, *Breaking the Banc: The Common–Law Process in the Large Appellate Court*, 23 Ariz. St. L.J. 915, 926–27 (1991) (noting that the binding force of the result in a case derives from the "unique sense of responsibility that comes from knowing that a legal pronouncement will have consequences for an actual dispute"). We note that dicta in *Shih Wei Su* inaccurately characterized *Miranda* as having "held" that no AEDPA deference was due. *Shih Wei Su*, 335 F.3d at 126 n. 3.

**12.** This is not to necessarily endorse the rule of *Wiggins* and *Boyette*. Indeed, one might well question why the extent of the state court's explanation changes the nature of federal habeas review as constrained by § 2254(d). Rather, § 2254(d)(1) might best be read as being satisfied by a finding of unreasonable error as to any one element of a federal claim, regardless of how many elements the state court discussed. After all, § 2254(d)(1) speaks of a decision that "involved an" unreasonable application of law, not a decision that "consists entirely of" unreasonable applications of law.

**13.** We note that any intimation from *Boyette's* citation to *Washington v. Schriver*, 240 F.3d 101, 109–10 (2d Cir.2001), that a silent state-court opinion is not "on the merits" was rendered a nonprecedential *sub silentio* holding when we withdrew our *Washington* opinion and filed an amended opinion that expressly reserved decision on whether AEDPA deference can apply to a silent opinion. *See Washington v. Schriver*, 255 F.3d 45, 55 (2d Cir.2001). Indeed, shortly after we filed the amended opinion in *Washington* reserving the issue, we decided in *Sellan* that AEDPA deference is no less due to unexplained rulings than to explained rulings. *Sellan*, 261 F.3d at 311–14.

#### d. *DeBerry v. Portuondo*

The third of the three AEDPA-deference cases is *DeBerry v. Portuondo,* 403 F.3d 57 (2d Cir.2005), in which we were presented with a state court's decision affirming the petitioner's conviction and rejecting his federal claims as "either unpreserved for appellate review or without merit," *People v. DeBerry,* 234 A.D.2d 470, 651 N.Y.S.2d 559, 560 (App.Div.1996), *quoted in DeBerry,* 403 F.3d at 61. We first held that under *Fama,* the state court's decision did not rest on a procedural bar. *DeBerry,* 403 F.3d at 64–66. We then moved to the question whether AEDPA deference applied, noting that "the distinction between AEDPA and pre-AEDPA standards is not crucial." *Id.* at 68. Accordingly, we did not feel constrained to decide whether AEDPA deference applied. Instead, we noted that the state trial court did adjudicate the claims on the merits, that *Miranda* would not allow us to find an adjudication on the merits by the Appellate Division, and that AEDPA review therefore might or might not apply. *Id.* at 67–68. Thus, like *Miranda's* discussion, *DeBerry's* AEDPA discussion was dicta, not essential to the decision. *See Messiah,* 435 F.3d at 197 n. 5 (labeling *DeBerry's* dicta as such). And, for the reasons given above regarding *Miranda,* we are not persuaded to follow *DeBerry's* language.[14]

* * *

This brings us to the state of the relevant law today: In the adequate-and-independent-state-ground line of cases, *Quirama* tells us to look to three clues to decide if the *Coleman* requirement of the *Harris* presumption is met, and *Fama* held that a state court's "either/or" rejection of a federal claim meets the *Coleman* requirement when the behind-the-opinion clues show a merits disposition, when the clues are indeterminate, and even when they show a procedural disposition—those clues simply do not matter in the *Fama* analysis because the "either/or" language rules the day. In the AEDPA-deference line of cases, *Sellan* instructs us to examine the three *Quirama* clues to decide whether a disposition rests on the merits. *Ryan* established that AEDPA deference applies to an "either/or" state-court adjudication where nothing on the face of the state court's opinion indicates that the claim was decided on procedural grounds and no state procedural bar exists, reasoning that the only alternative to finding that AEDPA deference applies is treating the claim as procedurally barred. Contrary dicta in two further cases, *Miranda* and *DeBerry,* proves unpersuasive. In sum, although no case has explicitly held that the *Harris* presumption applies to the "on the merits" inquiry under AEDPA, *Ryan* strongly implies that it does, and none of our holdings are inconsistent with that conclusion.[15]

---

**14.** We note that *DeBerry* did reconcile *Fama* and *Miranda* doctrinally, stating that "[i]t is self-evident, we believe, that a state court can fail to clearly express its reliance on a procedural basis while, at the same time, not adjudicating the claim on the merits [as required for AEDPA deference to apply]." *DeBerry,* 403 F.3d at 67 n. 7. We do not doubt this as a descriptive matter; a state court surely might rely on a procedural bar without broadcasting this to the world. But while *DeBerry* explained that *Miranda's* dicta could apply, it did not explain why it makes sense for that dicta to apply.

**15.** Although not of precedential force, it is interesting that some of our cases have assumed without explanation that the *Harris* presumption applies for purposes of AEDPA deference under 28 U.S.C. § 2254(d). For example, in *Jones v. Stinson,* we applied the *Harris* presumption to deem an ambiguous state-court decision to rest on the merits of the petitioner's federal claim for procedural-bar purposes and then seamlessly proceeded to hold that AEDPA deference limited our review of the petitioner's claim. 229 F.3d at 117–19. Two recent cases have followed the same pattern. *See Brown v. Miller,* 451 F.3d 54, 56–57, 59 (2d Cir.2006) (applying the *Harris* presumption to find that a state-court pro-

### 4. Our holding: *Harris* guides the AEDPA inquiry

█ Today, we explicitly hold what *Ryan* strongly implies: The conclusive presumption set forth by the Supreme Court in *Harris* and *Coleman* applies to the determination under 28 U.S.C. § 2254(d) of whether a state-court adjudication is "on the merits." The Supreme Court designed the *Harris* presumption to predict efficiently and accurately the basis of a state court's adjudication, and federal courts undertake this same inquiry under AEDPA facing the same circumstances that motivated the Supreme Court to create and apply the presumption in the first place. We see in the Supreme Court's cases no reason why the *Harris* presumption would not apply to the AEDPA-deference determination, nor do we see any reason to apply a different test that could create logically incongruous results. Moreover, in enacting AEDPA, Congress was presumably aware of the customary judicial usage of "on the merits" in the procedural-bar context and intended that term to have the same meaning under the AEDPA, bringing along the *Harris* presumption. *See supra* note 4.

█ Thus, when examining the basis of a state court's adjudication of a federal claim, a federal habeas court in this circuit should examine the three clues laid out in *Coleman, Quirama,* and *Sellan*[16] to classify the decision as either:

(1) fairly appearing to rest primarily on federal law or to be interwoven with federal law or

(2) fairly appearing to rest primarily on state procedural law.

*See Coleman,* 501 U.S. at 739–40, 111 S.Ct. 2546. Absent a clear and express statement of reliance on a state procedural bar, the *Harris* presumption applies to decisions in the first category and deems them to rest on the merits of the federal claim. Such decisions are not procedurally barred and must be afforded AEDPA deference as adjudications "on the merits" under 28 U.S.C. § 2254(d). The *Harris* presumption does not apply to decisions in the second category, which show themselves to rest on an independent state procedural bar. Nor does it apply to decisions in the first category which contain a clear statement of reliance on a state procedural bar. No AEDPA deference is due to these decisions, but the state may successfully assert that habeas relief is foreclosed provided that the independent state procedural bar is adequate to support the judgment and that neither cause and prejudice nor a fundamental miscarriage of justice is shown.[17]

The effect of these rules is to present federal habeas courts with a binary circumstance: we either apply AEDPA deference to review a state court's disposition of a federal claim or refuse to review the claim because of a procedural bar properly raised.[18] *See Messiah,* 435 F.3d at 197 n.

cedural ruling interwoven with a federal claim was not procedurally barred and, without further discussion, reviewing the federal claim under AEDPA's deferential standard); *Green v. Travis,* 414 F.3d 288, 296 (2d Cir. 2005) (reasoning that "[h]aving determined that Green did not procedurally default his *Batson* challenge, we apply the standards of review contained in 28 U.S.C. § 2254.").

**16.** To reiterate, the three clues to the basis of a state court's decision are (1) the face of the state-court opinion, (2) whether the state court was aware of a procedural bar, and (3)

the practice of state courts in similar circumstances.

**17.** If the state waives the right to make this argument, *see Trest,* 522 U.S. at 89, 118 S.Ct. 478, and no AEDPA deference is due, we apply pre-AEDPA standards. *See Aparicio,* 269 F.3d at 93.

**18.** Assuming that the independent state procedural bar is adequate to support the judgment and not excused by a showing of either cause and prejudice or a fundamental miscarriage of justice. *Coleman,* 501 U.S. at 730,

5. The middle ground envisioned by *Shih Wei Su*, 335 F.3d at 126 n. 3, does not exist.

## 5.   AEDPA deference in this case

■   AEDPA deference under § 2254(d) is due to the Appellate Division's rejection of Jimenez's present-a-defense claim if that judgment was an "adjudicat[ion] on the merits." 28 U.S.C. § 2254(d). Under *Sellan*, we hold that the Appellate Division "adjudicated" Jimenez's present-a-defense claim: Although the state court failed to provide reasoning for its decision, it disposed of the claim and reduced its disposition to judgment. *Sellan*, 261 F.3d at 312. This leaves the question whether the Appellate Division's disposition was "on the merits."

■   Were we unbound by precedent, we would now examine the three clues to the basis of the state court's decision and classify the decision as one that either meets or fails the *Coleman* requisite. But *Fama* has already made that classification, binding us today. *Fama* held that a state court's rejection of a federal claim as "either unpreserved for appellate review or without merit" meets the *Coleman* requisite regardless of background circumstances—clues unimportant under *Fama*. *Fama*, 235 F.3d at 810–11. Such an "either/or" decision is deemed to rest on the merits of the federal claim under the *Harris* presumption because there is no plain statement to the contrary. *Id.* Because we hold that the *Harris* presumption also applies to the AEDPA-deference inquiry, *Fama* requires us to hold that the Appellate Division's adjudication of Jimenez's claim was on the merits for purposes of § 2254(d). Accordingly, AEDPA deference applies.

## B.   Applying AEDPA Deference to Jimenez's Claim

■   Under § 2254(d), we decide whether the Appellate Division's rejection of Jimenez's present-a-defense claim "resulted in a decision that was contrary to" or "involved an unreasonable application of" clearly established Supreme Court precedent. 28 U.S.C. § 2254(d)(1).[19] In making this determination, we may look only to the holdings of the Supreme Court, as opposed to its dicta, and only to the Supreme Court's holdings as of the time of the relevant state-court decision—December 1, 1997. *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

### 1.   Clearly established federal law

■   The constitutional right to present a complete defense at a criminal trial was clearly established at the time of the Appellate Division's decision. *See Taylor v. Illinois*, 484 U.S. 400, 408, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988); *Rock v. Arkansas*, 483 U.S. 44, 51–53, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987); *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986); *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). For the exclusion of evidence to violate this right by denying the accused a fundamentally fair trial, the evidence must be "material," in the constitutional sense that it "creates a reasonable doubt that did not otherwise exist" as evaluated "in the context of the entire record." *United States v. Agurs*, 427 U.S. 97, 112–13, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). "If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justifica-

---

111 S.Ct. 2546; *Harris*, 489 U.S. at 262, 109 S.Ct. 1038; *Cotto*, 331 F.3d at 239, 247.

**19.**   A petitioner may also satisfy § 2254(d) by showing that subsection (d)(2) is met, but that provision, which concerns the state court's factual determinations, is not in dispute here.

tion for a new trial." *Id.* But "if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." *Id.* at 113.

As with many rights, the right to present a defense is not unlimited. The criminal defendant "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers,* 410 U.S. at 302, 93 S.Ct. 1038. The defendant "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Taylor,* 484 U.S. at 410, 108 S.Ct. 646. Although "federal habeas corpus relief does not lie for errors of state law," *Estelle v. McGuire,* 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (quotation marks omitted), the exclusion of evidence pursuant to an evidentiary rule "may not be arbitrary or disproportionate" to the purpose that the rule is designed to serve, *Rock,* 483 U.S. at 55–56, 107 S.Ct. 2704.

Finally, in habeas actions, trial errors are subject to harmless-error review. *Brecht v. Abrahamson,* 507 U.S. 619, 638, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993). If excluded evidence would create otherwise nonexistent reasonable doubt, its exclusion satisfies the "substantial and injurious" reversible-harm standard. *Kyles v. Whitley,* 514 U.S. 419, 436, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). In sum, we conclude that Jimenez's present-a-defense claim is based upon clearly established federal law as determined by the Supreme Court. The Constitution prohibits the pointless or arbitrary exclusion of material evidence.

### 2. "Contrary to"

We hold that the Appellate Division's decision of Jimenez's present-a-de-

fense claim was not contrary to clearly established federal law as determined by the Supreme Court. The Appellate Division did not arrive at a conclusion of law opposite to one reached by the Supreme Court, *Williams,* 529 U.S. at 405, 120 S.Ct. 1495, nor did it reach a result different from one reached by the Supreme Court on materially indistinguishable facts, *id.* at 406, 120 S.Ct. 1495.

### 3. "Unreasonable application"

When applying § 2254(d)'s "unreasonable application" clause to silent state-court opinions, we review outcomes, not reasoning. *Sellan,* 261 F.3d at 311–12. For a writ of habeas corpus to issue, we must conclude not only that the trial court's exclusion of the heroin evidence was unconstitutional but that it was so plainly unconstitutional that it was objectively unreasonable for the Appellate Division to conclude otherwise. *Williams,* 529 U.S. at 409–10, 412, 120 S.Ct. 1495. An "increment of incorrectness beyond error is required" to allow habeas relief, *Francis S. v. Stone,* 221 F.3d 100, 111 (2d Cir.2000), and although "the increment need not be great," *id.,* we must be able to "adequately identify why [we] found the [state-court] decision … to be 'objectively unreasonable,'" *Fuller v. Gorczyk,* 273 F.3d 212, 219 (2d Cir.2001).

In applying these standards, Jimenez's possible use of the excluded heroin evidence is relevant. Jimenez informs us that he·was to defend his case with the following theory: The victim was involved in a drug deal that went bad on the night of his murder, a drug deal about which Barrera and Margie Cardona knew and that Barrera may have facilitated. Barrera and Cardona falsely implicated Jimenez for either or both of two reasons: (1) Barrera and Cardona were afraid of being charged with drug crimes or (2) Barrera

himself arranged for the victim's murder for drug-related reasons and wanted to shift the blame.

On direct review, we might be inclined to find that the heroin evidence was material to Jimenez's defense. The heroin evidence is certainly "probative" in the evidentiary sense of the word because it makes the truth of Jimenez's theory more likely than without the evidence. And the heroin evidence might be foundational to Jimenez's defense, as opposed to merely collateral, because Jimenez had no other direct evidence that drugs were involved in the events on the night of the murder. Evidence of commercial amounts of heroin could support an inference that Barrera and the victim were at a drug sale, which could support an inference that Barrera was afraid of being prosecuted with drug crimes, which might support an inference that Barrera chose to falsely implicate Jimenez in the shooting, possibly because drug dealings had in fact motivated Barrera to orchestrate the shooting. And the inference of a drug sale could help unite other pieces of evidence—namely, testimony placing a third person with a gun at the shooting and evidence suggesting that two guns were brandished and fired that night.

But we cannot hold that the heroin evidence would have so plainly created reasonable doubt that a conclusion to the contrary would be objectively unreasonable. The Appellate Division could have reasonably concluded that the foregoing chain of inferences in Jimenez's materiality argument is simply too tenuous and that even with the heroin evidence admitted, the jury would still have discounted the testimony supporting Jimenez's theory. We do not find that conclusion objectively unreasonable.

Because the state court's decision was silent and because we hold that it was not objectively unreasonable to deem the heroin evidence constitutionally immaterial, we need not apply § 2254(d)(1) to the second element of Jimenez's claim, which asks whether the trial court's exclusion of the evidence was arbitrary. *See Sellan*, 261 F.3d at 317 (holding that § 2254(d)'s "unreasonable application" clause was not met upon finding that the state court's silent adjudication of one element of the petitioner's claim was objectively reasonable, without determining whether its silent resolution of the second element was unreasonable).[20] Federal law renders Jimenez ineligible for a writ of habeas corpus premised upon this claim. *See* 28 U.S.C. § 2254(d)(1).

## II. Jimenez's Cumulative–Error Claim

Jimenez claims that cumulative trial-court error produced a trial setting that was fundamentally unfair, thereby depriving him of his constitutional right to due process. *See Taylor v. Kentucky*, 436 U.S. 478, 487 n. 15, 98 S.Ct. 1930, 56 L.Ed.2d 468 (1978). We deny a writ of habeas corpus on this claim because Jimenez did not fairly present this claim to the state courts and may no longer do so. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

Before a state prisoner may obtain a writ of habeas corpus from a federal court, the prisoner must exhaust his remedies in state court. 28 U.S.C. § 2254(b)(1); *O'Sullivan*, 526 U.S. at 842, 119 S.Ct. 1728. The exhaustion requirement "is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state

---

**20.** As we have explained, *see supra* note 12, it might make more sense for courts to read § 2254(d) as being satisfied by a finding of unreasonable error as to any one element of a federal claim, rather than requiring objectively unreasonable error as to every element of a silently adjudicated claim.

judicial proceedings," *Rose v. Lundy*, 455 U.S. 509, 518, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), and "is not satisfied unless the federal claim has been 'fairly presented' to the state courts," *Daye v. Att'y Gen.*, 696 F.2d 186, 191 (2d Cir.1982) (en banc). To prevent a prisoner from exhausting his claims by simply letting the time run on state remedies, the Supreme Court "crafted a separate waiver rule—or as it is now commonly known—the procedural default doctrine." *O'Sullivan*, 526 U.S. at 853, 119 S.Ct. 1728 (Stevens, J., dissenting). Under the procedural-default doctrine, when a prisoner has exhausted his state remedies but has not given the state courts a fair opportunity to pass on his federal claims, the prisoner has procedurally defaulted his claims and is ineligible for federal habeas relief absent a showing of "cause and prejudice" or "a fundamental miscarriage of justice." *Id.* at 854, 119 S.Ct. 1728 (internal citations omitted).

■ The state contends that Jimenez did not fairly present his cumulative-error claim to the state courts. We agree. Jimenez did not present the cumulative-error claim to the Appellate Division in any of the four modes contemplated by this court in *Daye*,[21] nor did he alert the Appellate Division of that claim in another manner. *See Solis v. Garcia*, 219 F.3d 922, 930 (9th Cir.2000) ("Solis' petition did not label his cumulative error claim as an 'issue' in the contents section, nor did he argue the claim or cite authority for it. Because Solis cited no authority and made no argument, the government reasonably did not address Solis' cumulative error claim in its

brief either, leaving the [state court] with no argument from either side.").

Jimenez contends that he fairly presented the claim by using in his brief to the Appellate Division the transition phrase "was exacerbated by" to shift between argument of his *Brady* claim and argument of his evidence-exclusion claim, as well as by using the plural noun "rulings" in the brief's summary section to describe the two trial-court decisions that he contended violated his due process rights. These two isolated phrases do not give the state court fair notice of a distinct cumulative-error claim and simply serve as a transition and a summarization. We hold that Jimenez did not fairly present his cumulative-error claim to the state courts.

■ Jimenez's claim is now exhausted because state remedies are no longer available. Jimenez has already taken his one direct appeal, and this claim is procedurally barred from consideration in a collateral attack on his conviction. *See* N.Y.Crim. Proc. Law § 440.10(2)(c). Accordingly, because Jimenez has not *"properly* exhausted" his state remedies by fairly presenting his claim to the state courts, *O'Sullivan*, 526 U.S. at 848, 119 S.Ct. 1728, and may no longer do so, we agree with the respondent that Jimenez has procedurally defaulted his cumulative-error claim. Because Jimenez has not attempted to show either cause and prejudice for the default or a fundamental miscarriage of justice, he is ineligible for habeas relief on his cumulative-error claim. *See Murray v. Carrier*, 477 U.S. 478, 495–96, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

---

**21.** Those modes are:

   (a) reliance on pertinent federal cases employing constitutional analysis,

   (b) reliance on state cases employing constitutional analysis in like fact situations,

   (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and

   (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Daye*, 696 F.2d at 194.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment denying Jimenez's petition for a writ of habeas corpus.