**TI WU GAO, Petitioner,**

v.

**Alberto R. GONZALES,\* Attorney General, Respondent.**

No. 05–0012–ag.

United States Court of Appeals, Second Circuit.

Sept. 29, 2006.

---

\* Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Alberto R. Gonzales is automatically substituted for former Attorney General John Ashcroft as a respondent in this case.

**32**

Peter Lobel, Law Office of Peter Lobel New York, NY, for Petitioner.

Drew Wrigley, United States Attorney, District of North Dakota. Keith Reisenauer, Assistant United States Attorney, Fargo, ND, for Respondent.

PRESENT: Hon. GUIDO CALABRESI and Hon. B.D. PARKER, Circuit Judges, and Hon. GERARD E. LYNCH, District Judge.**

## SUMMARY ORDER

Ti Wu Gao, a native and citizen of China, petitions for review of an order of the Board of Immigration Appeals ("BIA"), affirming Immigration Judge ("IJ") Jeffery S. Chase's denial of his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We assume the parties' familiarity with the facts of this case, its procedural posture, and the decision below.

This Court reviews the agency's factual findings, including adverse credibility determinations, under the substantial evidence standard. *See* 8 U.S.C. § 1252(b)(4)(B); *Jin Hui Gao v. U.S. Att'y Gen.*, 400 F.3d 963, 964 (2d Cir.2005) (per curiam); *Zhou Yun Zhang v. INS*, 386

F.3d 66, 73–74 (2d Cir.2004); *Ramsameachire v. Ashcroft*, 357 F.3d 169, 177–78 (2d Cir.2004); *Secaida–Rosales v. INS*, 331 F.3d 297, 306–08 (2d Cir.2003); *Diallo v. INS*, 232 F.3d 279, 287–88 (2d Cir.2000). Where the BIA summarily affirms we review the IJ's decision directly as the final agency determination. *Twum v. INS*, 411 F.3d 54, 58 (2d Cir.2005).

In this case, IJ Chase erred in denying Gao's application for asylum, withholding of removal and CAT relief, as he improperly based his adverse credibility finding on two points of Gao's testimony that he found "implausible" or "highly unlikely." It is significant that the IJ did not substantially rely on Gao's false statements made during his airport interview as a basis for his adverse credibility finding; rather, the IJ gave Gao "credit" for admitting that he had been untruthful after being instructed to enhance his story by the "snakehead" who had brought him over. Nor did the IJ find any inconsistencies in Gao's asylum application and hearing testimony.

The IJ's adverse credibility finding was based almost entirely on his finding that two points in Gao's story were "highly unlikely"—first, that Xian Mie Chen, Gao's wife, had become pregnant one month after the birth of their son; and second, that Chen's aunt had performed a "fake sterilization" at Changle hospital when Chen was taken there for a forced sterilization after the birth of their second child. The IJ's findings, however, mischaracterized portions of Gao's testimony, and, moreover, were based on the kind of speculation that this Court has held cannot provide the basis for an adverse credibility finding. *See Chen v. U.S. Dep't of Justice*, 434 F.3d 144, 159 (2d Cir.2006) ("We do not, conse-

** The Honorable Gerard E. Lynch, of the United States District Court for the Southern District of New York, sitting by designation.

quently, rely on the IJ's findings to the extent that he erroneously mischaracterized petitioner's testimony or determined that petitioner was not credible due to perceived implausibilities or inconsistencies that were based solely on the IJ's 'bald speculation.' "); *Zhou Yun Zhang,* 386 F.3d at 74 ("[W]e look to see if the IJ has provided specific, cogent reasons for the adverse credibility finding and whether those reasons bear a legitimate nexus to the finding. In short, our review is meant to ensure that credibility findings are based upon neither a misstatement of the facts in the record nor bald speculation or caprice.") (internal quotations and citations omitted); *Cao He Lin v. U.S. Dep't of Justice,* 428 F.3d 391, 403 (2d Cir.2005) ("[T]he IJ's conclusion that [petitioner's] story is implausible was based on flawed reasoning and, therefore, cannot constitute substantial evidence supporting her conclusion.").

■ As to the first point, the IJ found it "implausible" that Chen had become pregnant while breastfeeding within a month of having her son. The IJ based this finding on an excerpt from a Merck Manual, which stated that women who were breastfeeding generally ovulated later—approximately 10 to 12 weeks after delivery—than women who did not breastfeed, who ovulated approximately 2 to 4 weeks after delivery. But, the IJ's conclusion that it was "implausible" or "highly unlikely" that Chen became pregnant within a month of having her son is not only speculative but also misstates Gao's testimony and the Merck Manual. First, Gao's testimony—that his first son was born on March 3, 1984, the abortion took place sometime in June 1984, and Chen was "around two months pregnant" at the time of the abortion—is just as consistent with Gao's wife having conceived nearly two months after giving birth as it is with her conceiving after only one month. And the Merck Manual stated that mothers could resume normal activi-

ties, including sexual intercourse, when they felt able; that pregnancy was possible during sex post-delivery and that contraceptives should be used; and that although women who were breastfeeding generally ovulated 10 to 12 weeks after delivery, they occasionally ovulated approximately 2 to 4 weeks after delivery, when non-breastfeeding mothers began to ovulate and menstruate. Thus, the IJ's finding that Chen becoming pregnant while breastfeeding was "highly unlikely" is not correct, and the IJ erred in making an adverse credibility finding on this basis.

■ Regarding the second point, the IJ found it implausible that Chen could have been taken to the hospital for a forced sterilization and that her aunt, a supervising doctor at Changle hospital, could have performed a "fake sterilization." Again, the IJ's finding was in part based on a misstatement of the record. The IJ was apparently confused as to why Gao had submitted a picture of Chen bearing a scar from an incision made during the course of a "fake sterilization" and suggested that submitting the photo "if anything hurt the case." Gao's asylum application, Gao's testimony, and Dr. Xiu Juan Chen's letter, however, all clearly indicated that Dr. Chen made an incision as if she were performing a routine sterilization, but did not complete the procedure; that is, she did not sever Chen's tubes. Because an incision was made, but the tubes were not severed, Gao's assertion was that the sterilization was "incomplete," and not "fake" as described by the IJ. Indeed, because Dr. Chen allegedly performed an actual surgery, the photograph of Chen bearing a scar from the incision supported Gao's claim that an incomplete sterilization had been performed. Because the IJ misstated the record and failed to consider the document showing Chen bearing a scar from the incomplete sterilization operation, the IJ's adverse credibility finding on this basis was flawed.

■ Moreover, IJ Chase's opening statement expressing his general doubt about documents provided in support of asylum claims by asylum-seekers from the Fujian province and, in particular, about Gao's supporting documents raises serious questions about whether the IJ properly considered the submitted documents. This Court has held that an IJ must consider any evidence relevant to an applicant's claim. *See Cao He Lin*, 428 F.3d at 400 ("[T]he IJ must consider all the evidence in the record that has probative value"); *Qiu v. Ashcroft*, 329 F.3d 140, 149 (2d Cir.2003) (stating that all evidence that could lend support to a petitioner's claim must be considered unless it is "too insignificant to merit discussion").

In support of his claim, Gao submitted, *inter alia*, residential identification cards for himself and Chen; a June 2002 letter from Chen's aunt, Dr. Xiu Juan Chen—the aforementioned former doctor at Changle hospital—stating that she had performed an incomplete sterilization on Chen in June 1986; a Changle Personnel certificate and photograph for Dr. Xiu Juan Chen indicating that she had retired from her practice as a supervisory doctor at Changle Clinic in October 1995; an affidavit from Gao's sister, Mei Yun Gao, in which she attested that Gao and Chen had "difficulties" with family planning officials in China, including that Chen had been taken for an incomplete sterilization; the Merck Manual of Medical Information excerpt; birth certificates for Gao, Chen and their two children; and a photograph of Chen showing a scar on her lower abdomen. Before Gao even began his testimony, IJ Chase stated that he would not look at all of the documents:

Let's see. Then it looks like there was another package containing resident ID cards, a letter from respondent's aunt, a retiree card from respondent's aunt and well, the photo of the spouse *I'm not even looking at.* I've said over and over

that I think those prove nothing, are ridiculous.

And IJ Chase categorically dismissed the relevance of Gao's documents, explaining that "in this courtroom a lot of documents don't help you" and that he would not get "bogged down" by considering "documents which probably aren't real." Except for the photograph of Chen, which the IJ attacked as "ridiculous," and the excerpt from the Merck Manual, the IJ did not refer to any of Gao's documents in his decision. Given his opening statements, it is, at best, unclear whether the IJ considered any of these other potentially relevant documents. And, at worst, the IJ's long and inappropriate remarks about his belief that documents submitted from the Fujian province were usually forgeries, coupled with his failure to identify any reason whatsoever for doubting the authenticity of these particular documents, suggests that the IJ may have discounted Gao's credibility, improperly, simply because Gao was from Fujian and had chosen to submit supporting documents.

In sum, the IJ's adverse credibility finding was unsupported by the record, and the IJ appears to have failed to consider most or all of Gao's supporting documents. Since we cannot say with certainty that the IJ or BIA would have reached the same conclusion absent these legal errors, we remand the case to the BIA. *See Cao He Lin*, 428 F.3d at 401. Because the IJ's denial of withholding of removal was based on the IJ's erroneous adverse credibility finding, and the IJ did not even reach Gao's CAT claim, *see Ramsameachire*, 357 F.3d at 185, these claims are also remanded to the BIA.

In addition to the legal errors permeating the adverse credibility determination, the proceedings below were marred by IJ Chase's behavior, which raises substantial questions as to his possible bias towards Chinese petitioners. This is not the first

time that this Court has found IJ Chase's conduct to suggest bias and hostility towards a Chinese petitioner. *See, e.g., Guo–Le Huang v. Gonzales,* 453 F.3d 142, 148 (2d Cir.2006) ("The hearings included several instances of questioning by [IJ Chase] that were at least inappropriate and at worst indicative of bias against Chinese witnesses."); *Meizi Liu v. BIA,* 167 Fed.Appx. 871, 873–74 (2d Cir.2006) (summary order) (remanding on the grounds that IJ Chase demonstrated a "pervasive bias and hostility" towards the petitioner). When faced with such conduct, we have previously held that it would be inappropriate for the same IJ to hear the case on remand and, therefore, have directed the BIA to assign the case to a different IJ. *Guo–Le Huang,* 453 F.3d at 150–51. Similarly, here, in the event that the BIA determines upon remand that further consideration by an IJ is warranted, this case should be assigned to a different IJ.

■ Finally, we note that this case was sent to the Regular Argument Calendar by a member of this Court to consider the question of whether, even if Gao can credibly show past persecution, and thus, by presumption, a fear of future persecution, *see Qiu,* 329 F.3d at 148, he should nevertheless be found ineligible for asylum on the basis of his testimony that economic motives also animated his decision to come to the United States. The issue is an important and an open one. The BIA and the IJ have not spoken to it in their discussion of Gao's petition, so we could not decide it here even if were so inclined. *See Gonzales v. Thomas,* — U.S. —, 126 S.Ct. 1613, 1615, 164 L.Ed.2d 358 (U.S. 2006). Given that the parties have not argued the issue, we would not be inclined to consider it, in any event. Nevertheless, it would be helpful if the BIA could speak to the issue, either in this case on remand, if deemed appropriate, or in another case in which the question is presented.[1]

For the foregoing reasons, the petition is GRANTED and the matter is remanded to the BIA for reconsideration consistent with this opinion and, if the BIA determines that further consideration by an IJ is warranted, reassignment to a different IJ. Having completed our review, any stay of removal that the Court previously granted in this petition is VACATED, and any pending motion for a stay of removal in this petition is DENIED as moot.

---

1. We recognize that the BIA may conclude that the Government has waived the issue by failing to argue it initially before the BIA or this Court.

