■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERTO VELAZQUEZ, Appellant. [822 NYS2d 65]—

Judgment, Supreme Court, New York County (Renee A. White, J., at suppression hearing; Dorothy Cropper, J., at jury trial and sentence), rendered June 26, 2002, convicting defendant of burglary in the second degree and three counts of criminal possession of stolen property in the fifth degree, and sentencing him, as a persistent violent felony offender, to an aggregate term of 16 years to life, unanimously affirmed.

The evidence at the hearing on defendant's motion to suppress established that Detective Serrentino received a telephone call from defendant's wife, Maria Andrades, on the morning of March 16, 2001. After speaking with her, Detective Serrentino and his partner met with her outside her apartment on E. 137th Street in the Bronx. Andrades told the detectives that defendant had "committed some burglaries" and handed to them property that she said defendant had stolen during a recent burglary. During the approximately five hours the detectives spent with Andrades, she both informed them that additional stolen property was in the apartment she shared with the de-

fendant on St. Ann's Avenue in the Bronx and told them "the story about the burglaries."

After arresting defendant on White Plains Road in the Bronx, the detectives brought him to the 24th Precinct stationhouse where defendant was advised of his *Miranda* rights. Defendant told the detectives he "didn't want to speak" and refused to waive his rights; interrogation then ceased. While processing defendant for arrest, the detectives recovered various items of property and a New York State "non-driver's license" identification card; the address printed on defendant's identification card was "137th Street in the Bronx."

Detective Serrentino began composing the on-line booking report by asking defendant the standard pedigree information. Although the identification card indicated that defendant's address was 137th Street in the Bronx, Detective Serrentino had been informed earlier by Andrades that she lived with defendant on St. Ann's Avenue. Accordingly, for "clarification," Detective Serrentino asked defendant where he lived. In response, defendant said he "rented a room with his wife, and that they live at 427 St. Ann's Avenue, apartment 3B," in the Bronx. Defendant also stated that the 137th Street address in the Bronx was his wife's "parents' home." Because the only address supported by physical proof was the 137th Street address, Detective Serrentino entered that address into the on-line booking report.*

Defendant's motion to suppress his statement that he lived with his wife at 427 St. Ann's Avenue properly was denied under the "pedigree exception," pursuant to which answers to questions reasonably related to police administrative concerns fall outside the protections of *Miranda v Arizona* (384 US 436 [1966]) (*see Pennsylvania v Muniz,* 496 US 582, 601-602 [1990]; *People v Rodney,* 85 NY2d 289, 292-293 [1995]). In *Rhode Island v Innis* (446 US 291 [1980]), the Supreme Court defined interrogation to "extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response" (*id.* at 302). However, a question which falls within the scope of interrogation under *Rhode Island v Innis* does not for that reason fall outside the pedigree exception. As the People correctly argue, a contrary conclusion would preclude, for example, any pedigree questions

---

* The evidence at trial made clear what both parties undoubtedly knew at the suppression hearing: a search warrant executed early in the morning of March 17, 2001 at the 427 St. Ann's Avenue apartment resulted in the seizure of items of property stolen from each of the apartments defendant was charged with burglarizing.

relating to a suspect's physical features whenever a crime victim gave a description of the perpetrator to the police.

Thus, in *People v Rodney*, the Court emphasized that the pedigree question at issue "was not a disguised attempt at investigatory interrogation" (85 NY2d at 294), and cited cases in which questions eliciting information bearing directly on an essential element of the crime charged were held to fall outside the pedigree exception (*id.* at 293). Here, the address question is unquestionably a proper and standard subject of pedigree inquiry; the detective's contemporaneous conduct of entering the 137th Street address into the on-line booking sheet stands as persuasive evidence that the question "was not a disguised attempt at investigatory interrogation"; and defendant's address has no necessary connection to an essential element of the crimes charged.

Since defendant moved to suppress his statement, a hearing was conducted, and suppression was denied, any purported failure to provide CPL 710.30 (1) (a) notice was irrelevant (*see People v Kirkland*, 89 NY2d 903 [1996]). The statement introduced at trial was substantially identical to the statement introduced at the hearing (*see People v Bennett*, 56 NY2d 837 [1982]). In any event, the People are not required to serve notice of a statement where, as here, the statement concerns defendant's pedigree and the questions are not designed to inculpate him (*People v Rodney*, 85 NY2d at 293).

Defendant's ineffective assistance of counsel claims primarily involve matters that are not reflected in the record, including counsel's trial preparation and strategy. Accordingly, they are not reviewable on direct appeal and require a further record to be developed by way of a CPL 440.10 motion (*see People v Love*, 57 NY2d 998 [1982]). On the existing record, to the extent it permits review, we find that defendant has failed to demonstrate he did not receive effective assistance under the state and federal standards (*see People v Benevento*, 91 NY2d 708, 713-714 [1998]; *see also Strickland v Washington*, 466 US 668 [1984]). Defendant failed to preserve his pro se claim that he was deprived of his federal constitutional right to be confronted with the witnesses against him because Andrades did not testify and the detective who met with her testified about the meeting, and we decline to review it. Were we to review it, we would find it meritless. The detective never testified to any statements made by Andrades, expressly or impliedly. Whatever the scope of the term "testimonial statements" (*Crawford v Washington*, 541 US 36, 61 [2004]), we are confident it will not be held so capacious as to embrace the complete absence of any statements by a nontestifying "witness."

We have considered and rejected the remaining claims contained in defendant's pro se supplemental brief. Concur— Sullivan, J.P., Williams, Gonzalez, Catterson and McGuire, JJ.