05-0610-pr
Murden v. Artuz

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

--------------------

August Term 2006

Argued: February 12, 2007          Decided: August 10, 2007

Docket No. 05-0610-pr

------------------------------------------------------X

WILLIAM MURDEN,

        Petitioner-Appellant,

    - against –

CHRISTOPHER ARTUZ, Superintendent of
Greenhaven Correctional Facility

        Respondent-Appellee.

------------------------------------------------------X

    Before: WALKER, HALL, Circuit Judges, and COTE, District

Judge[*]

    Petitioner appeals from the denial of a petition for a writ

of habeas corpus by the United States District Court for the

Eastern District of New York (Jack B. Weinstein, Senior District

Judge).  Petitioner argues that he received ineffective

---

[*] The Honorable Denise Cote, United States District Judge for the
Southern District of New York, sitting by designation.

assistance of counsel because his counsel failed adequately to investigate and pursue a defense of extreme emotional disturbance. Respondent argues that federal review of petitioner's claims is procedurally barred and that petitioner's claims would also fail on the merits.

AFFIRMED.

Judge Hall concurs in the judgment of the Court and files a separate concurring opinion.

> ANDREA G. HIRSCH, New York,
> New York, for Petitioner-Appellant
>
> CHARLES J. HYNES, District
> Attorney for Kings County (Leonard
> Joblove, Joyce Slevin, and Thomas
> M. Ross, Assistant District
> Attorneys, of Counsel), Brooklyn,
> New York, for Respondent-Appellee.

DENISE COTE, District Judge:

The Honorable Jack B. Weinstein issued a Certificate of Appealability with his denial of the petition filed by William Murden ("Murden") for a writ of habeas corpus. Murden asserts that his 1991 conviction for murder in the second degree in New York state court should be overturned because the jury was not given a charge on the partial affirmative defense of extreme emotional disturbance ("EED"). Specifically, Murden complains that his trial counsel failed to develop the evidence that would have supported an EED charge. For the following reasons, Judge

Weinstein's denial of the petition for a writ of habeas corpus is affirmed.

**BACKGROUND**

## I.   Trial Evidence

Murden was charged with two counts of murder in the second degree.  N.Y. Penal Law § 125.25[1], [2].  The evidence at trial established that on September 4, 1976 ("Saturday"), Murden stabbed his girlfriend Diane Miles ("Miles") in her bedroom nineteen times, causing her death.  At the time, Murden was thirty-three years old and Miles was twenty years old.  The summary of trial evidence that follows is drawn from the testimony of both the prosecution witnesses and Murden, who testified on his own behalf.  The discussion of Murden's relationship with Miles prior to September 3, 1976 ("Friday") is drawn entirely from Murden's testimony.

Murden, Miles, and Miles's five-year-old son Antoine, began living together in the summer of 1975.  In February 1976, Antoine's father attacked Murden and Murden ran away.  Miles and her mother teased Murden about the incident.  Murden was later evicted from the apartment he shared with Miles and when he found a new apartment, Miles initially refused to move in with him again.  After she rejoined him, the relationship went well for a few months, but in June 1976 Miles attempted to stab her sister and ended up stabbing Murden's friend instead.  Miles

also started to stay out nights.  She would leave her son with Murden or relatives and sometimes threatened Murden with a knife when he asked where she had been.

On Friday, Miles returned to the apartment after a four-day absence.  Murden asked where she had been, but did not get an answer.  Murden, Miles, and Miles's mother drank late into the night.  Miles then made Murden sleep separately so that Miles's mother could sleep in their bed.

On Saturday, some of Miles's other relatives and friends arrived.  Miles and her mother mocked Murden, saying he would have to leave the apartment.  Murden refused to leave, saying it was his apartment.  Murden drank a pint of rum that Miles's mother had given him, but claimed at trial that he was not "drunk" on Saturday.

After drinking the rum, Murden went shopping.  When he returned to the apartment, the only other people in the apartment were Miles, Antoine, Miles's fifteen-year-old cousin Cathy Faison ("Faison"), Miles's friend Jacqueline Crawford ("Crawford"), and Miles's seven-year-old niece Shereia Denee Webb ("Webb").[1]

The evidence viewed in the light most favorable to the state, see Policano v. Herbert, 430 F.3d 82, 84 (2d Cir. 2005), established that the following events then occurred.  Murden

---

[1] Webb's presence was disputed by the defendant.

entered the kitchen, where Miles and Faison were sitting with Antoine and Crawford.  Miles asked Murden how he had gotten into the apartment, since she had taken his key.  Miles and Murden began arguing.  Murden pulled a large knife out of a kitchen drawer and threatened to kill Miles with it.  Miles began crying, and Murden placed the knife back in the drawer, assuring Miles that he loved her.  Miles and Antoine then went to Miles's bedroom.

Murden hid a kitchen knife behind his back and followed Miles into the bedroom.  Murden approached Miles and leaned over her twice as if asking for a kiss.  When she refused to kiss him and pushed his face away, Murden pulled out the kitchen knife and repeatedly stabbed Miles as she cried for help and as her body slumped off the bed.

Murden left the bedroom and moved quickly down the hallway, holding the bloody knife.  As Faison testified, Murden "looked really wild," his eyes were "really wide open," and he "looked crazy."  When Faison asked Murden what was wrong, he did not answer, threw the knife down, and ran out of the apartment.  Two other witnesses heard Murden say, "I killed the bitch."

Murden took a taxicab to his cousin Rita Burrows's home. He reported encountering several people at Rita's home, including a "Benny Porter," who helped Murden board a bus for Georgia, allegedly to see a "root doctor" or spiritual healer to

cure pains in his stomach.  Murden remained a fugitive for thirteen years, until his arrest in Florida in 1989, where he was living under the name Gary Walters.  When arrested, Murden told a detective, "If I had stayed in New York this would be over by now," and, "I've been looking over my shoulder for thirteen years."

At trial, Murden's account of the sequence of events immediately preceding the murder differed sharply from that presented by the state witnesses.  He denied that he had taken a knife out of the kitchen drawer and threatened Miles.  He explained that he stayed in the kitchen talking to Faison and drinking a glass of ice water after Miles went into her bedroom.  Murden then went to Miles's bedroom, where they continued to argue about whether he would move out.  Murden testified that Miles then stabbed him in the leg with a knife.  He said he reached for her knife and that as he struggled with Miles, other people attacked him from behind, hitting him in the head and biting his leg.  He claimed that he then "blanked out."  On cross-examination he testified that he remembered "grabbing at" the knife.  Murden testified that he did not remember actually getting the knife away from Miles, but also admitted that he had

stabbed Miles and remembered swinging the knife at her.[2] Testimony by a forensic pathologist established that Miles's wounds were consistent with the assailant thrusting a knife downward and backward and the victim trying to protect herself and inconsistent with a knife slashing from side to side.

During the entire trial, Murden asserted a defense of justification, claiming that he stabbed Miles in self-defense. Sometime after explaining in his opening statement that his client had acted in self-defense, Murden's counsel decided to pursue an EED defense as well. The attorney argued vigorously for a jury charge on this partial affirmative defense. He argued that Miles's failure to appreciate all Murden had done for her, her aggressive treatment of him, her absences from the apartment at night, and her cruel responses to his questions about those absences "all add[] up to a point where any normal person can reach that state of extreme emotional . . . disturbance" and that Miles's stabbing of Murden was "like the straw that broke the camel's back." The judge denied the request for an EED charge, holding that it was not supported by sufficient evidence. He observed,

> The way I understood the defendant's testimony was
> that he went into the bedroom without any intention to
> do anything. That he was surprised when the deceased,

---

[2] Murden now asserts that his trial attorney convinced him to admit to stabbing Miles even though he had no recollection of getting the knife from her.

> Diane Miles, is alleged to have stabbed him with a
> knife.  He reacted to the stabbing by apparently
> trying to protect himself from being attacked not only
> by Miss Miles, with a knife, but also someone behind
> him and someone on the floor biting his leg.

Defense counsel did not request an intoxication charge.  The judge charged the jury on the defense of justification.  Murden was convicted of murder in the second degree.

## II.  Sentencing

At the March 8, 1991 sentencing proceeding, the state asked for the maximum penalty of twenty-five years to life, emphasizing Murden's flight and lack of remorse.  When Murden spoke, he mentioned three complaints.  He complained about jury selection.  He asserted that he was telling the truth when he testified that he did not remember stabbing Miles, but that his attorney told him during a recess in his testimony to admit that he remembered doing it.  Finally, he objected that his witnesses had not been called to testify.  He said, "I didn't get none of my witnesses that I gave -- didn't get no witness that could help me on my side . . . ."  The judge asked for clarification, stating that there was "nobody else in the room who was an eyewitness as far as I know" and asking what kind of witness Murden was talking about.  Murden responded, "They are saying it wasn't my apartment and all that stuff like that and all other stuff, owner of the building, and --."  The judge interjected,

"Those kind of witnesses doesn't matter.  The question is whether you stabbed Ms. Miles with intent to cause her death, and as a result of the stabbing, you did cause her death, and whether you own the apartment, doesn't matter."

Murden concluded with a plea for mercy.  The judge sentenced him to twenty years to life imprisonment.

## III. Direct Appeal

On direct appeal, Murden argued that the trial court improperly refused his request for an EED charge.  The Appellate Division affirmed Murden's conviction, holding that the trial evidence was insufficient to support an EED defense.  People v. Murden, 593 N.Y.S.2d 837 (App. Div. 1993).  It noted that Murden had relied at trial upon a justification defense.  It found that his flight from the scene and the jurisdiction immediately after the defense was inconsistent with the loss of control associated with an EED defense; that his consumption of alcohol and argument with his girlfriend just prior to the murder did not suffice to establish the objective element of an EED defense; and that the character of his argument with his girlfriend did not establish a reasonable excuse for his claimed emotional disturbance.  Murden's application for leave to appeal to the New York Court of Appeals was denied without opinion.  People v. Murden, 616 N.E.2d 862 (N.Y. 1993).

## IV.  First Section 440 Motion

In his first motion to vacate, filed pursuant to Section 440.10 of the New York Criminal Procedure Law ("C.P.L.") with the assistance of counsel on February 5, 1996, Murden claimed that he was denied effective assistance of trial counsel because his counsel had failed to present enough evidence to support an EED defense.  He argued that trial counsel failed adequately to confer with him in preparation for trial, and failed to consult numerous potential witnesses whose testimony could have supported both an EED and justification defense and bolstered his credibility.  He also asserted that trial counsel failed to investigate Murden's suicide attempt in 1972 or 1973, four years before Miles's murder.[3]  In his affidavit offered in support of his motion, he asserted that prior to trial he had informed trial counsel of six witnesses who could have testified to his emotional state shortly after Miles's murder:  his cousin Rita, his sister Debra,[4] Benny Preston[5] ("Preston"), Mabel Lilly, Robert Leverman, and Katherine Leverman.  According to Murden,

---

[3] Murden also argued that he was denied the opportunity to testify before the grand jury and that trial counsel was intoxicated, among other claims that are not presently at issue.

[4] Murden submitted an affidavit from Debra Tulloch to support a second Section 440 motion that he filed in 2004.  Debra Tulloch appears to be the sister "Debra" he mentioned in his 1996 affidavit.

[5] "Benny Preston" appears to be the same individual whom Murden identified at trial as "Benny Porter."

they were at his cousin's home on Saturday and knew of his emotional disturbance, the pain in his stomach, and the wounds on his hand and leg.  Murden identified Dr. Dallas Moore, John and Rose Clark, Jack Mayes, and Miles's sister, Sheila Webb, as individuals who could have testified about his stomach ailment and Miles's mistreatment of Murden.  Murden submitted an affidavit from one of these individuals, Preston, who described Murden as appearing unusually agitated and frightened on Saturday evening and reported Murden saying that he had been attacked and had had to defend himself.  Murden also explained that he had told his trial counsel that he had seen a psychiatrist six or seven times after a suicide attempt in 1972 or 1973, when he was despondent because a girlfriend wanted to throw him out of his apartment.

The judge who had presided over Murden's trial denied his motion on March 28, 1996.  He ruled that Murden's claims that trial counsel was ineffective for his failure to call certain witnesses and for coercing Murden to perjure himself were procedurally barred under C.P.L. § 440.10(2)(c) because Murden had brought up these issues at sentencing and the record contained facts sufficient for him to raise these claims on direct appeal.  The judge also ruled that, "[i]n any event, defendant's claims lack merit."  He noted that the defendant had testified at trial of his stomach pain before the stabbing,

Miles's mistreatment of him, the wounds he suffered when he was stabbed and bitten, and his agitation.  He concluded that the trial record contained all of the facts that Murden's witnesses could have supplied.  The judge observed that the Appellate Division had already held that those facts were insufficient to establish the EED defense, and that Murden's behavior before and after the murder was inconsistent with the loss of control associated with the defense.[6]  The decision did not discuss whether trial counsel should have investigated Murden's suicide attempt.

With new counsel, who has continued to represent Murden ever since, Murden applied on April 24, 1997 for leave to appeal the denial of his Section 440 motion.  He argued that with sufficient preparation trial counsel would have concluded that the EED defense was stronger than the justification defense and would have presented just the EED defense to the jury rather than a "scramble" of both defenses.  With a more cohesive presentation, he asserted that the trial court would have been required to include the EED defense in its charge.  Leave to appeal was denied on July 9, 1997.

---

[6] The judge also observed that defense counsel had never appeared inebriated to the trial court.

## V.   1997 Habeas Petition

In his habeas petition, which he filed on April 24, 1997, Murden raised the same claims he had raised in his initial motion to vacate, except that he did not repeat his claims that his trial counsel had been intoxicated or that trial counsel failed to investigate or present evidence on Murden's 1972 suicide attempt and psychiatric care.  The district court dismissed the petition, holding that it was untimely under the Antiterrorism and Effective Death Penalty Act ("AEDPA").  Murden v. Artuz, No. 97-CV-2155(SJ), 1998 WL 305540 (E.D.N.Y. Apr. 23, 1998).  With the state's consent, this dismissal was vacated on appeal and the petition was remanded.

On June 30, 2000, Murden filed a supplemental submission that contained new grounds for his claim that trial counsel had been ineffective.  He added that counsel's failures in pursuing an EED defense included the failure to have Murden evaluated by a psychiatrist and to obtain psychiatric records from 1972.  The state and Murden both submitted additional briefing to the district court, and Murden included his hospital records from an apparent suicide attempt in 1972.

On April 25, 2003, the petition was reassigned to Judge Weinstein.[7]  Responding to the state's argument that Murden had

---

[7] The Murden petition was reassigned to Judge Weinstein in connection with Judge Weinstein's extraordinary offer to work

not yet exhausted his new grounds for asserting ineffective assistance, Judge Weinstein administratively closed the case on September 4, 2003 to permit Murden to exhaust these grounds.

## VI.  Second Section 440 Motion

In his second motion to vacate, filed on January 2, 2004, Murden argued that his trial counsel was ineffective for his failure to develop the evidentiary record which would have suggested the existence of an EED defense, for pursuing a justification defense that was "hopeless," and for not developing the evidence that Murden was intoxicated during the killing and requesting an intoxication charge.[8]  According to Murden, trial counsel failed to conduct a pre-trial investigation, to obtain psychiatric records concerning Murden's prior suicide attempt, to have Murden examined by a psychiatrist, and to interview potential defense witnesses.

Murden submitted several pieces of evidentiary material that he had not presented with his original Section 440 motion.

---

through the backlog of habeas corpus petitions in the Eastern District of New York.  In re Habeas Corpus Cases, No. 03-misc-66(JBW), 2003 WL 21919833 (E.D.N.Y. May 1, 2003).  After reviewing and issuing decisions on five hundred petitions, Judge Weinstein issued his Report on 500 Habeas Corpus Cases to Chief Judge Edward R. Korman on December 11, 2003.  298 F. Supp. 2d 303 (E.D.N.Y. 2003).

[8] Murden also presented several other arguments not at issue here.

He submitted his 1972 psychiatric records and an affidavit from a psychiatrist, Dr. Eric Goldsmith, who evaluated Murden's trial testimony and psychiatric records reporting that Murden "might want to hurt" his girlfriend at the time because of jealous feelings. Dr. Goldsmith concluded that Murden "likely" killed Miles under the influence of an extreme emotional disturbance.[9] Murden also presented three affidavits from individuals who saw Murden Saturday night and who could support his intoxication defense. His sister Debra Tulloch averred that Murden looked drunk, wide-eyed, and discombobulated, "like he was out of it," on Saturday night.[10] Another sister, Elaine Boomer, reported that Murden had sounded very upset and was drinking when they spoke by telephone on Friday night and that Saturday night he looked as if he had been drinking and was crying, apologizing, and saying that he "didn't mean to hurt" Miles. Preston stated that Murden looked like he might have been drinking on Saturday night. In his own affidavit, Murden describes himself as drunk when Miles was killed.

---

[9] Murden explained that he lacked the funds to pay for an examination by Dr. Goldmith, and asked the state court to appoint Dr. Goldsmith as an expert under Article 18-B to conduct such an examination.

[10] Tulloch asserts that at least three other witnesses that Murden had identified to trial counsel as possible witnesses are now dead: his cousin Rita Burrows, to whose apartment he fled on Saturday night, and Robert and Katherine Leverman, who were at Rita Burrows's apartment that night.

On March 26, 2004, the state court denied Murden's second Section 440 motion, finding both that it was procedurally barred and failed on the merits. Citing C.P.L. §§ 440.10(3)(b) and (c), the judge found that the entire motion was procedurally barred because the claims were or could have been raised in the original Section 440 motion. In addition, insofar as the motion asserted that Murden received ineffective assistance of counsel because his trial counsel coerced him to lie and failed to call his witnesses, the court found the claims procedurally barred because they could have been raised on direct appeal. See C.P.L. § 440.10(2)(c). On July 14, 2004, the Appellate Division denied Murden leave to appeal.

## VII. 2004 Habeas Litigation

Murden's federal habeas petition was reopened on September 7, 2004. Murden amended his petition to add all of the claims in the second Section 440 motion that had not been presented in his original petition. As relevant to this appeal, he added ineffectiveness claims premised on trial counsel's failure to get Murden's psychiatric records and to retain a psychiatrist. He argued that his claims were not procedurally barred and that

the state court's merits ruling was an unreasonable application of federal law.[11]

At a hearing before Judge Weinstein on December 16, 2004, in which Murden participated by telephone, his trial counsel testified that he did not have a good recollection of this case or of how many times he met with Murden. The attorney had been retained by Murden's mother in November 1990, at a time when the case was marked as "trial ready," and after Murden had been in custody for over a year. In early January 1991, the trial court scheduled the trial to begin at the end of the month.

One page of trial counsel's surviving pretrial notes contained the name Debra Murden beside a telephone number and the notation "get from mother." The same sheet contained the name and number of a potential character witness, with the notation "NOT GOOD." Another page contains the notations "Elaine Boomer," "Jack + Helen Mayes," and "Deborah Murden." The attorney had not retained all of his notes and did not remember if Murden had suggested other potential witnesses, but asserted that it was his general practice to contact and evaluate potential witnesses. Habeas counsel for Murden offered

---

[11] Although Murden did not submit to the District Court the affidavits from Tulloch, Boomer, and Preston that he had submitted to the state court in support of his second Section 440 motion, he did refer to them in his 2004 submissions to the district court, and they were included in the state court record which was transmitted to the district court.

a passage from the trial transcript showing that, when the trial judge had asked trial counsel for witness names to read to potential jurors, defense counsel had conferred with Murden and written some names before answering. Murden testified about his communications with his trial counsel and asserted that he had lied at trial when he had denied being drunk at the time of the murder.

In a twenty-two page unpublished opinion of January 3, 2005, Judge Weinstein thoughtfully evaluated the merits of each of Murden's claims, finding that the reopened petition was timely, that Murden had exhausted his claims, and that the procedural bar arguments were not decisive because the claims failed on the merits and Murden had received a fair trial. From his review of the trial transcript and the hearing evidence, Judge Weinstein found that trial counsel had been prepared and had mounted a vigorous defense. Where Murden and his trial counsel disputed facts concerning the representation, Judge Weinstein found counsel credible and found Murden's credibility to be "suspect."

Judge Weinstein noted, however, that the claim that the attorney had failed to investigate fully the EED defense was "not without some basis," and that it was possible that he should have pursued that defense in lieu of a justification

defense.  Instead, after opening to the jury on the theory of self-defense alone, trial counsel chose to pursue both defenses.

When he turned to the second prong of the Strickland test for ineffective assistance of counsel, however, Judge Weinstein found Murden unable to show prejudice.  See Strickland v. Washington, 466 U.S. 668 (1984).  While trial counsel "did not have a winner" with self-defense, he "had a loser with EED." Murden's psychiatric records "would have revealed petitioner to the jury as a violently jealous man, possessed by a kind of homicidal jealousy directed at least [at] one other person in addition to this victim."  Psychiatric testimony based on Murden's contemplated suicide following an intense argument with a prior girlfriend would not have established the objective element of the EED defense since there was no reasonable explanation for an extreme emotional disturbance, as the Appellate Division had already held in rejecting Murden's direct appeal from his conviction.  Murden having testified at trial that he acted in self-defense, Judge Weinstein found that he could not complain that his counsel had failed to pursue a factually incompatible theory.  Judge Weinstein concluded that the proffered testimony from the uncalled witnesses would not have helped to obtain an acquittal.

Judge Weinstein nonetheless granted a Certificate of Appealability ("COA") confined to the issues of whether Murden

was denied effective assistance of counsel because defense counsel (1) failed to have Murden assessed by a psychiatrist, and (2) failed to investigate or prosecute an EED defense. In a June 6, 2006 order, we expanded the scope of the COA to include (1) whether Murden was denied effective assistance of counsel by defense counsel's failure to investigate the EED defense by not speaking to Murden or his witnesses before trial; and (2) whether the procedural bars cited by the New York State court bar relief on the substantive issues on appeal.[12]

## DISCUSSION

We review de novo the District Court's denial of Murden's petition for a writ of habeas corpus, and we review its factual conclusions for clear error. Mosby v. Senkowski, 470 F.3d 515, 518 (2d Cir. 2006). Murden filed his habeas petition after the effective date of AEDPA, so it is subject to review under the standards established in that Act. 28 U.S.C. § 2254(d); Lynn v. Bliden, 443 F.3d 238, 245 (2d Cir. 2006).

This appeal addresses the claim that Murden's trial counsel was ineffective for his failure to do the following: (1) have Murden evaluated by a psychiatrist; (2) obtain evidence of Murden's hospitalization and psychiatric care following his

---

[12] The state urges us to deny the petition as untimely. Because we may affirm the district court's denial of the petition on other grounds, we choose not to reach that issue.

possible suicide attempt in 1972; (3) interview and/or call defense witnesses to testify in support of an EED defense; and (4) confer with Murden regarding an EED defense. We begin by addressing the state's assertion that review of each of the alleged omissions of Murden's trial counsel is procedurally barred.

## I.    Procedural Bar

As explained below, Murden's assertion that his attorney failed to have him evaluated by a psychiatrist is procedurally barred because it could have been but was not presented in his first Section 440 motion. The three remaining accusations against trial counsel were sufficiently identified in the first Section 440 motion to warrant at least partial review on the merits.

### A.    Failure to Have Murden Evaluated by a Psychiatrist

Murden argued to the state courts for the first time in his second Section 440 motion that his trial counsel should have had him evaluated by a psychiatrist. In its March 26, 2004 decision, the state court ruled that this as well as other claims were procedurally barred because they either were or could have been raised in Murden's first Section 440 motion, citing C.P.L. §§ 440.10(3)(a), (b), and (c). Section

440.10(3)(c) of the C.P.L. applies to claims that a criminal defendant could have but did not adequately raise in a prior state court collateral attack on a conviction.[13]  It provides:

> Notwithstanding the provisions of subdivision one, the court may deny a motion to vacate a judgment when . . .
>
> (c) Upon a previous motion made pursuant to this section, the defendant was in a position adequately to raise the ground or issue underlying the present motion but did not do so.
>
> Although the court may deny the motion under any of the circumstances specified in this subdivision, in the interest of justice and for good cause shown it may in its discretion grant the motion if it is otherwise meritorious and vacate the judgment.

C.P.L. § 440.10(3)(c).

This court is generally procedurally barred from considering a ruling that "fairly appear[s] to rest primarily on state procedural law."  Jimenez v. Walker, 458 F.3d 130, 138 (2d Cir. 2006)(citation omitted).  Even where the state court has ruled on the merits of a federal claim "in the alternative," federal habeas review is foreclosed where the state court has also expressly relied on the petitioner's procedural default. Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) (citation omitted).  To bar federal habeas review, however, the state court's decision must rest not only on an independent procedural

---

[13] Subsections (a) and (b) generally apply to issues which appear in the trial record or which were decided during a prior collateral attack on the conviction.  C.P.L. §§ 440.10(3)(a), (b).

bar under state law, but also on one that is "adequate to support the judgment." Jimenez, 458 F.3d at 138.

A state procedural bar is "adequate" if it "is firmly established and regularly followed by the state in question" in the specific circumstances presented in the instant case. Monroe v. Kuhlman, 433 F.3d 236, 241 (2d Cir. 2006) (citation omitted). The "guideposts" for analyzing the issue of adequacy, articulated in the context of a procedural default occurring at trial, are:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (citation omitted). The Cotto guideposts also apply to testing the adequacy of a procedural default raised in a state collateral proceeding. See, e.g., Clark v. Perez, 450 F.Supp. 2d 396, 426 (S.D.N.Y. 2006). Because of comity concerns, a decision that a state procedural rule is inadequate should not be made "lightly or without clear support in state law." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (citation omitted).

When analyzed against the Cotto factors, subsection (3)(c) of C.P.L. § 440.10 constitutes an adequate state procedural bar to federal habeas review. The state court referred explicitly to C.P.L. § 440.10(3)(c) when it dismissed the ineffectiveness claim alleging that trial counsel should have engaged a psychiatrist to evaluate Murden. Moreover, New York state courts regularly apply subsection (3)(c) to deny claims that could have been but were not raised on previous motions to vacate. See Rosario v. Bennett, No. 01-CV-7142, 2002 WL 31852827, at *21 & n.31 (S.D.N.Y. Dec. 20, 2002) (M.J.) (collecting cases); see also, e.g., People v. Cochrane, 810 N.Y.S.2d 670, 671 (App. Div. 2006); People v. Brown, 807 N.Y.S.2d 24 (App. Div. 2005); People v. Sierra, No. 229/00, 2006 WL 2829819 (N.Y. Sup. Ct. Aug. 21, 2006).[14]

Turning to the third Cotto factor, Murden did not substantially comply with subsection (3)(c). His first

---

[14] The cases that Murden cites as considering successive Section 440 motions on their merits do not in any way suggest that Section 440.10(3)(c) is not regularly applied to bar the types of claims at issue here. In People v. Jackson, there was no claim that the defendant could have raised the state's failure to produce a witness's prior statement at any earlier point. 585 N.E.2d 795, 797 (N.Y. 1991). People v. Thomas, upheld enforcement of the subsection (3)(c) bar. 537 N.Y.S.2d 600, 601 (App. Div. 1989). People v. Bell addressed whether a Section 440.10 claim was barred by laches. 686 N.Y.S.2d 259, 262-63 (N.Y. Sup. Ct. 1998). People v. Coles does not address a successive Section 440.10 motion. 535 N.Y.S.2d 897 (N.Y. Sup. Ct. 1988).

collateral attack on his conviction contained no reference whatsoever to the absence of a psychiatric evaluation. Moreover, enforcement of the procedural bar here serves legitimate governmental interests. As New York's courts have explained, subsection (3)(c) protects "important finality concerns" and prevents delays that might prejudice the prosecution. People v. Bracey, 807 N.Y.S.2d 34, 36 (App. Div. 2005). Murden's first Section 440 motion was filed roughly five years after his conviction and nearly twenty years after the murder. His second Section 440 motion was filed nearly eight years later. Considering each of the Cotto factors, the procedural bar applied by the state court was adequate to bar federal habeas review on the merits,[15] as numerous district courts have found in the circumstances of their cases. See, e.g., Morales v. Greiner, No. CV-98-6284 (FB), 2005 WL 1009545, at *8 (E.D.N.Y. May 2, 2005); Bell v. Poole, No. 00-CV-5214(ARR), 2003 WL 21244625, at *9-10 (E.D.N.Y. Apr. 10, 2003); Rosario v. Bennett, 2002 WL 31852827, at *20-22; Ryan v. Mann,

---

[15] Murden argues that subsection (3)(c) is inadequate in light of Williams v. Georgia, 349 U.S. 375 (1955), and Sullivan v. Little Hunting Park, Inc., 396 U.S. 229 (1969). In each case, the Court refused to find that a state court procedural bar was adequate to prevent the exercise of Supreme Court review since the bars were not consistently applied in the circumstances presented in the cases on review. Williams, 349 U.S. at 383; Sullivan, 396 U.S. at 234. Murden has made no similar showing for C.P.L. § 440.10(3)(c).

73 F. Supp. 2d 241, 248 & n.7 (E.D.N.Y. 1998), aff'd, No. 99-2140, 1999 WL 1295334 (2d Cir. Dec. 27, 1999).

Murden argues that C.P.L. § 440.10(3) cannot constitute an independent and adequate state procedural bar because it is a discretionary and not mandatory rule.  Subsection (3) provides that a court "may" deny a motion to vacate in each of the circumstances it identifies, and also provides that "in the interest of justice and for good cause shown" a court may exercise its discretion and grant a meritorious motion.  C.P.L. § 440.10(3); see also, e.g., People v. Bryce, 731 N.Y.S.2d 263, 268 (App. Div. 2001) (citing C.P.L. § 440.10(3) and vacating conviction in interests of justice where post-trial exhumation of victim's skull showed that trial evidence of skull fracture was grossly erroneous).  The statutory grant of discretion does not prevent Section 440.10(3) from operating as a procedural bar to federal habeas review under the circumstances presented in this case.

As already described, New York state courts regularly apply subsection (3)(c) to deny claims that could have been but were not raised on previous motions to vacate.  As this court found in connection with another New York rule that permits exceptions, even if New York law allows "some discretion to be exercised," the application of the procedural default rule in a particular case remains appropriate so long as the rule is

"evenhandedly" applied "to all similar claims." Wedra v. Lefevre, 988 F.2d 334, 340 (2d Cir. 1993) (enforcing procedural bar from time limits for appeals from denials of Section 440.10 motions). Similarly, in Glenn v. Bartlett, we found a procedural bar, based on the defendant's failure to preserve an objection at trial, even though the state court acknowledged that it could have reversed the conviction "in the interest of justice." 98 F.3d 721, 724-25 (2d Cir. 1996).

Finally, Murden contends that Section 440.10(3)(c) is not independent of federal law because it allows the court to grant the motion if, among other requirements, it "is otherwise meritorious," thus requiring the state court to look to the merits of a federal claim. We disagree. Where a state court explicitly relies on a state procedural bar and does not rest its application of the bar on its consideration of the merits, the ruling is independent of federal constitutional law. See Jiminez, 458 F.3d at 145; see also Stewart v. Smith, 536 U.S. 856, 859-61 (2002). Nothing in Section 440.10(3)(c) requires the court to look to the merits of the prisoner's motion, and nothing in the record here suggests that the court considered the merits in applying this procedural bar.

Even though a constitutional claim is procedurally barred from federal review, Murden may obtain review of his claim on the merits if he shows that equity demands it. Dretke v. Haley,

541 U.S. 386, 393 (2004).  To obtain such review, he must either demonstrate "cause and prejudice for the procedural default," or that the "constitutional violation has probably resulted in the conviction of one who is actually innocent of the substantive offense."  Id. (citation omitted); see also Doe v. Menefee, 391 F.3d 147, 160-63 (2d Cir. 2004); DiGuglielmo v. Smith, 366 F.3d 130, 135-36 (2d Cir. 2004).

Murden argues that he can show cause for the default because the attorney who represented him on his first Section 440 petition was ineffective when he failed to include this argument.  There is no constitutional right, however, to an attorney "in state post-conviction proceedings" where such proceedings are not the first appeal as of right.  Coleman v. Thompson, 501 U.S. 722, 752 (1991).  As a consequence, "a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings," id., and errors by counsel in such proceedings do not constitute cause for a procedural default.  Id. at 756-57.

Murden asks that this court reject Coleman's holding in light of the guidance in Massaro v. United States that federal defendants should be permitted to bring ineffective assistance claims through federal habeas petitions "whether or not the petitioner could have raised the claim on direct appeal."  538 U.S. 500, 504 (2003).  Murden reasons that defendants in state

criminal proceedings should also have a right to submit ineffective assistance claims for the first time through a collateral attack on a conviction, and therefore that we should find that they have a constitutional right to counsel in bringing their first state court collateral attack on their conviction, at least where they raise a claim that trial counsel was ineffective.  There is, however, no constitutional right to representation by counsel to pursue a claim that trial counsel was ineffective, apart from the right to counsel for direct appeal.  United States v. Doe, 365 F.3d 150, 155 (2d Cir. 2004).  Even where a federal defendant raises an ineffectiveness claim for the first time through a habeas petition, there is no constitutional right to counsel.  Id.

Murden also has not shown actual innocence.  "To demonstrate actual innocence a habeas petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence."  Dunham v. Travis, 313 F.3d 724, 730 (2d Cir. 2002) (citing Schlup v. Delo, 513 U.S. 298, 327 (1995)).  This requires "a stronger showing" than the showing of prejudice necessary to prevail on an ineffective assistance claim.  Id.  Actual innocence requires "not legal innocence but factual innocence."  Menefee, 391 F.3d at 162.

The affirmative defense of extreme emotional disturbance is a partial defense to second-degree murder, and is available

where "[t]he defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse." N.Y. Penal Law § 125.25(1)(a). There are two elements to the EED defense.

> To prove such an affirmative defense, a defendant must demonstrate, first, that he or she acted under the influence of an extreme emotional disturbance and, second, that there was a reasonable explanation or excuse for that disturbance. The first, subjective element is met if there is evidence that defendant's conduct at the time of the incident was actually influenced by an extreme emotional disturbance. The second is an objective element and requires proof that defendant's emotional disturbance was supported by a reasonable explanation or excuse. This is determined by viewing the subjective mental condition of the defendant and the external circumstances as the defendant perceived them to be at the time, however inaccurate that perception may have been, and assessing from that standpoint whether the explanation or excuse for the emotional disturbance was reasonable.

People v. Roche, 772 N.E.2d 1133, 1138 (N.Y. 2002) (citation omitted). Proof of the subjective and objective elements of the EED defense permits conviction of the defendant of manslaughter in the first degree in lieu of murder in the second degree. Vargas-Sarmiento v. U.S. Dep't of Justice, 448 F.3d 159, 166 (2d Cir. 2006).

Murden has not shown that, with testimony from a psychiatrist, no reasonable juror would have convicted him of murder. Murden has offered an affidavit from a psychiatrist whose examination of Murden's trial testimony and 1972

psychiatric records has led him to conclude that Murden "likely" was suffering from an extreme emotional disturbance when he killed Miles. The psychiatrist opines that these documents suggest that Murden "had a mood and personality disorder, was vulnerable to humiliation, lacked stability, and could not manage his emotions, and that his emotional condition was dependent on the condition of his relationship with his girlfriend," likely causing him to lose control of his emotions when Miles taunted him and told him to leave the apartment.

If a psychiatric examination had been conducted at the time of the trial, the examination would have taken place fifteen years after the murder, seriously undermining its probative value regarding Murden's emotional condition at the time of the crime. Murden's trial testimony that he lashed out in self-defense also runs counter to the proffered EED defense. While Murden was entitled to pursue alternative defenses at trial, his description of the course of events that led to Miles's death significantly weakens the EED defense as a practical matter. Murden has not made the showing required to demonstrate actual innocence. In sum, Murden's claim that trial counsel was ineffective for his failure to have Murden evaluated by a psychiatrist is procedurally barred from federal habeas review.

**B.   Failure to Interview Witnesses**

The state contends that Murden's claim that his trial

attorney was ineffective due to his failure to interview or call

witnesses is procedurally barred because Murden could have

raised it on direct appeal.  This portion of Murden's

ineffectiveness claim is not procedurally barred.

Murden raised his trial counsel's failure to interview

witnesses in his first Section 440 motion.[16]  In ruling on that

motion, the state court found the claim procedurally barred,

pursuant to C.P.L. § 440.10(2)(c), because the trial record

permitted Murden to raise this claim on direct appeal.

Subsection (2)(c) provides:

> Notwithstanding the provisions of subdivision one
> [listing grounds for vacating judgment], the court
> must deny a motion to vacate a judgment when . . .
>
> Although sufficient facts appear on the record of the
> proceedings underlying the judgment to have permitted,
> upon appeal from such judgment, adequate review of the
> ground or issue raised upon the motion, no such
> appellate review or determination occurred owing to
> the defendant's unjustifiable failure to take or
> perfect an appeal during the prescribed period or to

---

[16] Although Murden offered an affidavit from Preston and no other
witnesses in support of his first Section 440 motion, we find
that he preserved his claim that his trial counsel had failed to
interview and evaluate each of the witnesses Murden identified
in his first Section 440 motion.  To the extent Murden offered
more witness affidavits or identified more witnesses when he
filed his second Section 440 motion, consideration of that
evidence is procedurally barred.  See Kennaugh v. Miller, 289
F.3d 36, 40, 41, 48-49 (2d Cir. 2002), aff'g 150 F. Supp. 2d 421
(E.D.N.Y. 2001).

> his <u>unjustifiable failure to raise such ground or</u>
> <u>issue upon an appeal</u> actually perfected by him . . . .

C.P.L. § 440.10(2)(c) (emphasis supplied).

Where the basis for a claim of ineffective assistance of counsel is well established in the trial record, a state court's reliance on subsection (2)(c) provides an independent and adequate procedural bar to federal habeas review.  See <u>Sweet v. Bennett</u>, 353 F.3d 135, 140 (2d Cir. 2003).  Since not every ineffective assistance claim is sufficiently presented in a trial record, however, the New York Court of Appeals has long recognized that a Section 440.10 proceeding is often superior to a direct appeal for asserting such claims.  As the New York Court of Appeals observed in <u>People v. Brown</u>, "in the typical case it would be better, and in some cases essential, that an appellate attack on the effectiveness of counsel be bottomed on an evidentiary exploration by collateral or post-conviction proceeding brought under C.P.L. 440.10."  382 N.E.2d 1149, 1149 (N.Y. 1978); <u>see also</u> <u>People v. Love</u>, 443 N.E.2d 486, 487 (N.Y. 1982); <u>People v. Velazquez</u>, 822 N.Y.S.2d 65, 67 (App. Div. 2006); <u>People v. Daley</u>, 818 N.Y.S.2d 300, 302 (App. Div. 2006); <u>People v. Flagg</u>, 819 N.Y.S.2d 577, 581 (App. Div. 2006). Accordingly, New York courts have refused to apply subsection (2)(c) to bar an ineffective assistance claim where "sufficient facts do not appear on the record of the proceedings underlying

the judgment to have permitted" adequate review of the issue on direct appeal. People v. Harris, 491 N.Y.S.2d 678, 687 (App. Div. 1985) (citation omitted); accord People v. Johnson, 732 N.Y.S.2d 137, 139 (App. Div. 2001); People v. Williams, 586 N.Y.S.2d 215, 215 (App. Div. 1992).

The state has not shown that subsection (2)(c) provides an adequate state procedural bar in the context of the specific claim made here. While it is true that the state court explicitly relied on this bar when it denied Murden's first Section 440 motion, the state has not shown that state courts regularly demand compliance with this rule when a defendant makes reference to uncalled witnesses in the course of a sentencing proceeding. The focus of the proceeding was on the length of the sentence that the court would impose, and not on the adequacy of trial counsel's representation of the defendant. As a result, there was an insufficient exploration of Murden's accusation to enable him to litigate this issue on direct review. Murden's claim that his attorney failed to interview or call witnesses to support an EED defense is therefore not procedurally barred.

C.    Remaining Two Claims

The state claims that Murden's remaining two claims are also procedurally barred.  This contention can be swiftly rejected.

In his first Section 440 motion Murden argued that his trial counsel failed to investigate his attempted suicide in 1972 and to confer with him in preparation for the trial.  The ruling on the first Section 440 motion applied no procedural bar to these claims and found that all of Murden's claims lacked merit.  Thus, to the extent that he raised these issues in that initial collateral attack on his conviction, they are not procedurally barred from our review.

The rejection of the claims concerning the attempted suicide and failure to confer in the second Section 440 motion on the ground that they were or could have been raised in the original Section 440 motion, and the citation to C.P.L. § 440.10(3)(c), creates a procedural bar to federal habeas review only to the extent that Murden offered new evidence or argument with his second motion.  See Kennaugh v. Miller, 289 F.3d 36, 48-49 (2d Cir. 2002) (applying procedural bar to review of second set of police reports presented on a motion to renew or reargue a Section 440 motion).  Thus, we are procedurally barred from considering Murden's 1972 psychiatric records, which were not presented with his first Section 440 motion, but we are not

barred from considering his reference to his prior suicide attempt, which was presented on that first motion.

## II.  Merits

Having resolved the extent to which Murden is procedurally barred from federal habeas review of his ineffective assistance claim concerning the EED defense, we turn to the merits of Murden's claim that his trial counsel should have consulted with him regarding his EED defense, interviewed witnesses for that defense, and explored his attempted suicide some four years prior to the murder.  Under AEDPA, when a claim "was adjudicated on the merits in State court proceedings," a federal court may not issue a writ of habeas corpus unless the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Id. § 2254(d)(2).  Findings of fact by the state court are presumed correct, and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  Id. § 2254(e)(1).  To find that a state court has unreasonably applied clearly established federal law, "we must be able to

adequately identify why [we] found the [state-court] decision .
. . to be objectively unreasonable." Jimenez, 458 F.3d at 147
(citation omitted).

In denying Murden's initial Section 440 motion, the trial
court reached the merits of his ineffectiveness claim.[17]  It
found that trial counsel had consulted with Murden at trial,
that Murden's disagreement with his trial counsel's "strategy or
tactics" did not result in ineffective assistance, and that the
proffered evidence from the uncalled witnesses, including the
evidence described in the Preston affidavit, had already been
presented to the jury through Murden's own testimony and was in
any event insufficient to establish the EED defense.  This
ruling on the merits is entitled to AEDPA deference.  See 28
U.S.C. § 2254(d).  Although the state court did not specifically
dismiss Murden's assertion regarding the failure to investigate
the 1972 suicide attempt, an unexplained ruling on the merits is
also entitled to AEDPA deference.  Jimenez, 458 F.3d at 143
(citing Sellan v. Kuhlman, 261 F.3d 303, 311-12 (2d Cir. 2001)).

Murden correctly identifies Strickland v. Washington, 466
U.S. 668 (1984), as the relevant Supreme Court precedent for
evaluating his claim of error.  Under Strickland, a defendant

_____

[17] As described above, the state court ruled in the alternative
in denying Murden's motion, finding that certain components of
the motion were procedurally barred, but that all of it should
be denied on the merits "in any event."

must show that counsel's representation "fell below an objective standard of reasonableness" determined according to "prevailing professional norms" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 688, 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. A court must consider "the totality of the evidence before the judge or jury" in judging counsel's performance. Id. at 695. To prevail, a defendant must establish both of Strickland's prongs because, otherwise, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 687. Counsel's performance is examined from counsel's perspective at the time of and under the circumstances of trial. Id. at 689. Counsel is "strongly presumed" to have exercised reasonable judgment in all significant decisions. Id. at 690.

Murden has not shown that the state court's rejection of Murden's ineffective assistance claim was either contrary to, or an unreasonable application of, the Strickland standard. Nor has Murden presented clear and convincing evidence that the state court's factual findings were incorrect.

It was entirely reasonable for Murden's counsel to pursue as Murden's primary defense the claim that Murden had killed

Miles in self-defense.  The justification defense was consistent with Murden's description of the events that led to Miles's murder.  Murden did not describe lashing out after Miles rebuffed his request for a kiss.  He did not assert that he killed her because he suddenly feared that he would lose her or his apartment.  Instead, he described striking out only after and in reaction to Miles's attacking him with a knife and others attacking him from behind.  Even the Preston affidavit, which Murden offered with his first Section 440 motion, corroborated the justification defense.  According to Preston, on the Saturday night of the murder Murden reported that he had been attacked and had acted to defend himself.

It is of course permissible as a legal matter for an attorney to pursue alternative and even factually inconsistent defenses, but as a practical matter, it is difficult for Murden to show that he was prejudiced by his counsel's failure to develop the EED defense further at trial.  Murden argues that, had his counsel been effective, he could have established that Murden was predisposed to emotional disturbance based upon troubles with girlfriends and that the taunting by Miles and her family, Miles's threats to kick him out of his apartment, and her refusal to let him sleep with her on Friday night provoked an extreme emotional disturbance that caused Murden to kill

Miles.  Murden's trial testimony did not support the asserted EED defense, however, and was in fact inconsistent with it.

Moreover, with the exception of the victim, everyone who was present in the apartment at the time of the murder testified at trial, and their testimony was insufficient to establish either the subjective or the objective component of the EED defense.  The state court heard Murden's description at trial of his troubled relationship with the victim, her taunts of him, and the events as they unfolded that Friday and Saturday, and concluded (as had the Appellate Division on Murden's direct appeal) that it did not establish an EED defense.

None of the witnesses Murden identified in his first Section 440 motion could have done much to change that perception; none was a witness to the events that occurred at the murder scene that Saturday.  Even Preston's assertion in his affidavit that Murden appeared unusually agitated and frightened that Saturday night was of little benefit to Murden.  If anything, it undercut Murden's assertions at trial that he didn't learn until years later that he had actually killed Miles and that he had left New York to get medical treatment for his stomach ailment and not to flee from imminent arrest.

In addition, the references in Murden's first Section 440 motion to his 1972 suicide attempt, some four years before he murdered Miles, do little to alter the prejudice calculus.

Nothing in those papers suggested that the 1972 incident, which involved a different woman and was fairly remote in time, revealed any probability that the circumstances existing just prior to Miles's murder would trigger in Murden a homicidal emotional disturbance.  Nothing in those papers suggested that Murden's mental condition in 1976 made such a disturbance a reasonable response to the circumstances that Murden described having experienced on the day he killed Miles.

In sum, when the evidence that Murden put before the state court in his first Section 440 motion is viewed cumulatively, it does not show sufficiently that the evidence would have created a reasonable probability at trial that Murden would have prevailed on an EED defense.  More significantly for this petition, it certainly does not permit us to find that the state court unreasonably applied Strickland.

**CONCLUSION**

For the foregoing reasons, the opinion of the district court is hereby AFFIRMED.

05-0610-pr

HALL, Circuit Judge, concurring in the judgment:


     I agree with the result reached by the majority and its
analysis of the exhaustion issues.  I write separately to
consider the claim that Judge Weinstein, in taking the rare step
of issuing a certificate of appealability, invited this Court to
consider: "petitioner's claim that he was denied the effective
assistance of trial counsel because [counsel] failed to have the
petitioner assessed by a psychologist or psychiatrist and failed
to investigate or prosecute an extreme emotional disturbance
defense."  I think the majority wrongly implies (without
explicitly saying as much) that Murden failed to satisfy both
prongs of *Strickland*'s inquiry.  *See Strickland*, 466 U.S. at
687.  In my view, as discussed below, the record demonstrates
that Murden proved in his first § 440 motion filed in state
court and on habeas review in the district court that trial
counsel's performance was not objectively reasonable.  I concur
in the mandate, however, because I agree with the majority that
Murden failed to show prejudice.  Only for that reason would I
hold that the ineffective assistance of counsel claim cannot
succeed.

The majority's discussion of the objective reasonableness of trial counsel's performance is limited to the conclusion that it was entirely reasonable for counsel to pursue self-defense as a primary defense. Maj. Op. at Discussion Section II. But this conclusion assumes that any deficiency in pursuing the EED defense is therefore excused. I do not believe that *Strickland* condones deficient performance in investigating one defense if another also happens to be available. *See, e.g., Michael v. Crosby*, 430 F.3d 1310, 1320 (11th Cir. 2005) ("Counsel's duty to investigate requires that counsel conduct a substantial investigation into any of his client's plausible lines of defense.") (citation and internal quotation marks omitted); *see also Eze v. Senkowski*, 321 F.3d 110, 135-36 (2d Cir. 2003) (ineffective assistance may be demonstrated where counsel performs competently in some respects but not others). In addition, in focusing only on the self-defense issue, the majority does not consider the range of Murden's allegations properly before us: that trial counsel did not consult with Murden regarding an EED defense, but should have done so; that counsel did not interview witnesses for that defense, but should have done so; and that counsel did not explore Murden's past attempted suicide, but should have done so.

Murden's allegations are supported by the record. Pre-trial transcripts show that counsel requested time to review the

file on the January 9, 1991 calendar call, and to "sit with the defendant on one more occasion to prepare it." 1/9/91 Hearing Tr. at 6. Counsel's notes indicate that he met with Murden for one hour each on January 9 and on January 23, the day of the next calendar call. At jury selection five days later (after a three-day vacation), counsel was unable to name the witnesses he intended to call until he consulted with his client. Although counsel testified at the December 2004 hearing before the district court that he did not remember whether he had met with Murden at any other point before trial, he provided no evidence to establish that he had done any investigation into the EED defense.

Nothing in the record contradicts Murden's assertions that counsel did not consult with him about the EED defense or otherwise pursue it. Even setting aside what has been asserted about counsel's pre-trial preparation, however, his actions at trial proclaim that he did not prepare or investigate the EED defense. Counsel neither mentioned the EED defense in his opening statement, nor on cross-examination did he ever inquire of witnesses about Murden's emotional state. He did not call any witnesses to bolster the defense. He introduced no evidence of Murden's psychiatric history or prior suicide attempt. Unfortunately, it is little wonder that his request for an EED

charge at the conclusion of his case was denied for lack of evidence supporting it.

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. It is readily apparent that counsel here gave no thought to laying the foundation for the EED defense until the end of the trial. Had counsel adequately prepared for the case, he would have thought to raise the defense from the beginning. Had he done some investigation, it would have revealed that Murden had a psychiatric history and that he had threatened suicide and to hurt his previous girlfriend when she threw him out of their apartment. We also know that at least one psychologist believes Murden was suffering from a mood and personality disorder and could not manage his emotions. It is logical to conclude that timely investigation would have revealed similar expert testimony for use at the trial.

I can conceive of no strategic reason for an attorney who wishes to assert an EED defense to decide not to: (1) consult with his client about the defense; (2) interview witnesses with the defense in mind; and (3) explore a documented past suicide attempt made by his client. *See id.* at 690 (a court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's

46

conduct"). Moreover, if, despite what the record clearly indicates to me, counsel did in fact do some investigation into this defense, I do not understand what strategy would compel counsel to avoid presenting the defense in opening statements or introducing any evidence or testimony supporting the defense. *See Eze*, 321 F.3d at 136 (noting that, when strategic considerations do not account for a challenged decision by counsel, the deficient-performance prong of *Strickland* will likely be met); *Hart v. Gomez*, 174 F.3d 1067, 1071 (9th Cir. 1999) (finding it "inconceivable" that strategy played a part in counsel's decision not to introduce readily-available evidence that would have corroborated a particular line of defense). Accordingly, to the extent the state court and district court found trial counsel's performance effective despite this lack of preparation, and to the extent the majority implicitly adopts these finding, I respectfully disagree.